

FILED IN CHAMBERS
STATE OF ALASKA
FIRST JUDICIAL DISTRICT
AT JUNEAU

*Jan. 23, 2006*
TV

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
## FIRST JUDICIAL DISTRICT AT JUNEAU

JOHN H. SHAKESPEARE )
     Plaintiff, )
                            )
                            )
      vs. )
CITY & BOROUGH OF JUNEAU, )
JUNEAU POLICE DEPARTMENT )
OFFICERS # OF FOUR )
OFFICER MATT TORAK )
OFFICER ROBERT KOLVIG )
OFFICER BRIAN DALLAS )
OFFICER BEN CORONELL )
     Defendants. )

Case No. 1JU-05-632 CI


## ORDER ON MOTIONS

On the night of July 19, 2003, the Juneau Police Department received a report of a

single vehicle accident in the Lemon Creek area. Two witnesses at the scene informed an

officer that they had seen the driver of the van leave the scene of the accident and enter a

nearby trailer home, which was owned by Mr. Shakespeare. When an officer explained to

Mr. Shakespeare that his son, Trevor Shakespeare, had been involved in an accident and

that the police needed to talk to him, Mr. Shakespeare refused to let the officers enter.

The officers nevertheless entered the home, after the District Attorney advised the officers

Exb. B

that they should enter the home to ensure that Trevor Shakespeare was not injured.[1]  Mr.

Shakespeare filed a constitutional tort claim stemming from the officers' entry into his

home without a warrant.

Mr. Shakespeare recently has filed two documents with the court, which the court

will treat as a Motion to Compel and a Motion for Summary Judgment.  Defendants have

opposed both motions and Mr. Shakespeare has not responded to either Opposition.

### MOTION TO COMPEL

Mr. Shakespeare's first motion is titled: "Motion for All Police Reports, Field

Recording, And Pitchers, And handwritten hand notes of the Night of 7-19-2003."  The

court will treat the motion as a Motion to Compel.

The superior court has discretion whether or not to order discovery.[2]   Under Civil

Rule 37 (a) (2) (B) , this court may compel a party to produce discovery if the moving

party has made a good faith attempt to secure the information without court action.

Before the court will compel discovery, the moving party – in this case, Mr. Shakespeare

– must make two showings:  1) the movant must include a certification that he, in good

faith, conferred, or attempted to confer with plaintiff regarding the sufficiency of

---

[1] Affidavit of Matthew Torok, pg 1-4.
[2] Douglas v. Glacier State Telephone Co., 615 P.2d 580, 593 (Alaska 1980).

Shakespeare v. CBJ, Officers Matt Torok, Robert Kolvig, Brian Dallas, Ben Coronell
1JU-05-632 CI
Order on Motions

plaintiff's answers to the interrogatories; 2) the movant must show that the opposing party has not complied.[3]

In filing the Motion to Compel, Mr. Shakespeare has not made either showing. Mr. Shakespeare also must give some meaningful idea of what is missing.

In opposing the Motion to Compel, defendants point out that they already have produced all relevant police reports and field recordings. Defendants also note that they did not provide pictures related to Case No. 1JU-S03-1286 CR because defendants did not have any pictures and none were known to exist.

The court DENIES the Motion to Compel.

## MOTION FOR SUMMARY JUDGMENT

Mr. Shakespeare also moves "under Civil Rule 56" to settle the case for $50,000. The court will treat the motion as a Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD AND BURDEN

To obtain summary judgment, the moving party bears the initial burden of proving through admissible evidence (1) that there is no genuine issue as to any material fact; and (2) its entitlement to judgment as a matter of law.[4] Once the movant has established a prima facie case, the non-movant, in order to prevent entry of summary judgment, is required to set forth specific facts showing that it could produce admissible evidence

---

[3] Alaska R. Civ. P. 37 (a) (2) (B).
[4] Alaska R. Civ. P. 56 (c); Powell v. Tanner, 59 P.3d 246, 248 (Alaska 2002).

Shakespeare v. CBJ, Officers Matt Torok, Robert Kolvig, Brian Dallas, Ben Coronell
1JU-05-632 CI
Order on Motions

reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists.[5] The court construes facts offered in support of and in opposition to a motion for summary judgment in a light most favorable to the nonmoving party.[6] The moving party must show by affidavit or other admissible evidence that no genuine issue of material fact exists; Mr. Shakespeare has submitted no affidavits.

## DISCUSSION

Mr. Shakespeare argues that he is entitled to a judgment for money damages as a matter of law because he suffered a violation of the right of privacy as guaranteed to him under the Alaska State Constitution.[7] In the underlying case giving rise to Mr. Shakespeare's constitutional claim,[8] the District Court Judge determined that the search of Mr. Shakespeare's home violated the Fourth Amendment right of Mr. Shakespeare's son to be free from unreasonable searches. Accordingly, the District Court Judge suppressed the evidence that was the fruit of the unconstitutional entry.

A Fourth Amendment violation of Mr. Shakespeare's son's right to be free from unreasonable searches is not ipso facto a violation of Mr. Shakespeare's right to privacy as guaranteed to him under the Alaska State Constitution. Mr. Shakespeare, in other words, has not shown that an absence of material fact as to the Fourth Amendment

---

[5] McGlothlin v. Municipality of Anchorage, 991 P.2d 1273, 1277 (Alaska 1999).
[6] Beilgard v. State, 896 P.2d 230, 233 (Alaska 1995).
[7] AK CONST. art. I, § 22.
[8] State of Alaska v. Trevor Shakespeare, 1JU-03-1286 CR.

violation results in a summary judgment for a violation of the right of privacy. Neither

has Mr. Shakespeare shown that the ruling made in his son's case is controlling in this

case.

The Alaska Supreme Court has explained that the right to privacy is not absolute,

but is subject to balancing against conflicting rights and interests.[9] Where a fundamental

right is involved, the state must show a compelling state interest justifying its

abridgement.[10] More recently, the Supreme Court reiterated the <u>Messerli</u> test as follows:

> (1) does the party seeking to come within the protection of the right to [privacy]
> have a legitimate expectation that the materials or information will not be
> disclosed?
> (2) is disclosure nonetheless required to serve a compelling state interest?
> (3) if so, will the necessary disclosure occur in that manner which is least intrusive
> with respect to the right to [privacy]?[11]

In the Fourth Amendment context, the phrase "compelling state interest," does not

describe a fixed, minimum quantum of governmental concern, which would enable one to

dispose of the case by answering in isolation the question: is there a compelling state

interest here? "Rather, the phrase describes an interest which appears important enough to

justify the particular search at hand, in light of other factors which show the search to be

relatively intrusive upon a genuine expectation of privacy."[12] A touchstone of a

---

[9] <u>Messerli v. State</u>, 626 P.2d 81 (Alaska 1980).
[10] <u>See id</u>. at 84.
[11] <u>Anchorage Police Dep't  Employees Ass'n v. Municipality of Anchorage</u>, 24 P.3d 547, 556 (Alaska, 2001) (citations omitted).
[12] <u>Id</u>. at 557.

compelling state interest is that the right of privacy "must yield when it interferes in a serious manner with the health, safety, rights and privileges of others or with the public welfare."[13]

A genuine issue of material fact exists as to whether the circumstances of the officers' entry into the home subrogate Mr. Shakespeare's right of privacy to the compelling state interest of ensuring the safety of the individuals involved in the auto accident. In the Opposition to Mr. Shakespeare's Motion for Summary Judgment, defendants note that the officers who entered Mr. Shakespeare's home did so in the good faith belief that they were acting under the emergency aid exception to the warrant requirement, after consultation with a district attorney.[14]

Although the District Court Judge determined that the emergency aid exception was inapplicable to the Fourth Amendment question, the District Court Judge specifically found that the officers were acting in good faith when they entered Mr. Shakespeare's home.[15] Although the officials' good faith may normally be a question of fact, the circumstances of certain cases may warrant a finding of good faith as a matter of law.[16] Executive officials who enforce a law in good faith are entitled to immunity from personal

---

[13] Ravin v. State, 537 P.2d 494, 504 (Alaska 1975).
[14] Opposition to Motions, p.3
[15] Opposition to Motions, Exhibit A, p.4.
[16] Lebert v. Hammond, 661 P.2d 635, (Alaska, 1983).

liability.[17]  This qualified immunity also extends to situations in which the law is later

held unconstitutional, either on its face or as applied.[18]

A genuine dispute of material fact exists as to whether the condition of Mr.

Shakespeare's son was sufficiently grave to warrant the officers' good-faith concern for

his safety.  Defendant's Opposition to     Mr. Shakespeare's Motion for Summary

Judgment noted that the District Court Judge found that the officers acted in good-faith

after a full briefing on the subject, as well as an evidentiary hearing at which both sides

were afforded due process.  Defendants have met their burden of showing that they could

produce admissible evidence to demonstrate that a material issue of fact exists.

Mr. Shakespeare also has not shown an entitlement to judgment as a matter of law.

The crux of Mr. Shakespeare's case in state court is a constitutional tort claim based on a

violation of the Alaska State Constitution.  Federal courts allow direct tort actions for

violation of certain provisions of the federal constitution, but only reluctantly, where no

alternative remedies are available.[19]  The Alaska Supreme Court, however, has never

recognized a Bivens-type private right of action for constitutional torts under the Alaska

Constitution.[20]  The court has noted that it will not allow a constitutional claim for

---

[17] Scheuer v. Rhodes, 416 U.S. 232, 247-48, (1974).
[18] Pierson v. Ray, 386 U.S. 547, 555, (1967).
[19] Thoma v. Hickel, 947 P.2d 816, 824 n. 5 (Alaska 1997) (citing Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971)).
[20] Lowell v. Hayes, 117 P.3d 745, 753 (Alaska, 2005).

damages, "except in cases of flagrant constitutional violations where little or no alternative remedies are available."[21]

Mr. Shakespeare has not shown that his case involves a flagrant constitutional violation. The alternative remedy of filing a 42 USC § 1983 in state court is also available. Thus, Mr. Shakespeare has not shown an entitlement to judgment as a matter of law.

The court DENIES the motion on this record.

Dated this 23ʳᵈ day of Jan , 2006, at Juneau, Alaska.

Larry R. Weeks
Superior Court Judge

CERTIFICATION OF SERVICE
I certify that I served the following parties on the 24 day of Jan. , 2006:

John Shakespeare
6590 Glacier Hwy #52
Juneau, AK 99801

Eric Kueffner
Faulkner Banfield
By Courtbox.

Tracy Ver Velde
Professional Assistant to Judge Weeks

---

[21] Dick Fischer Dev. No. 2 v. State of Alaska, Dep't of Admin., 838 P.2d 263, 268 (Alaska 1992).

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

JOHN H. SHAKESPEARE,

        Plaintiff,

    v.

CITY & BOROUGH OF JUNEAU, JUNEAU
POLICE DEPARTMENT OFFICERS # OF
FOUR
OFFICER MATT TOROK
OFFICER ROBERT KOLVIG                    Case No. 1JU-05-632 CI
OFFICER BRIAN DALLAS
OFFICER BEN CORONELL

        Defendants.

### DEFENDANTS' PRELIMINARY WITNESS LIST

Pursuant to the Scheduling Order dated November 23, 2005, the City & Borough

of Juneau and the Juneau Police Department Officers ("Defendants") provide the

following preliminary witness list:

        1.      Timothy Carle
                1651 Reninger Drive, D-101
                Juneau, Alaska 99801

Mr. Carle has information about the events he witnessed on the night of

July 19, 2003.

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ♦ Fax (907) 586-8090

2.    Sean Cropley
      c/o Eric Kueffner
      Faulkner Banfield, P.C.
      One Sealaska Plaza, Suite 202
      Juneau, Alaska 99801
      (907) 586-2210

Mr. Cropley has information about the events he witnessed on the night of

July 19, 2003.

3.    Benjamin Coronell
      c/o Eric Kueffner
      Faulkner Banfield, P.C.
      One Sealaska Plaza, Suite 202
      Juneau, Alaska 99801
      (907) 586-2210

Officer Coronell has information about his own actions during the events at

issue, those of the other police officers, and those of John Shakespeare and Trevor

Shakespeare.  The attorney-client privilege applies.

4.    Officer Brian Dallas
      c/o Eric Kueffner
      Faulkner Banfield, P.C.
      One Sealaska Plaza, Suite 202
      Juneau, Alaska 99801
      (907) 586-2210

Officer Dallas has information about his own actions during the events at

issue, those of the other police officers, and those of John Shakespeare and Trevor

Shakespeare.  The attorney-client privilege applies.

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

5.    Officer Robert Kolvig
c/o Eric Kueffner
Faulkner Banfield, P.C.
One Sealaska Plaza, Suite 202
Juneau, Alaska 99801
(907) 586-2210

Officer Kolvig has information about his own actions during the events at issue, those of the other police officers, and those of John Shakespeare and Trevor Shakespeare.  The attorney-client privilege applies.

6.    John Shakespeare
6590 Glacier Highway # 52
Juneau, Alaska 99801

Mr. Shakespeare has information about his own actions during the events at issue.

7.    Trevor Shakespeare
address unknown

Mr. Shakespeare has information about his own actions during the events at issue.

8.    Officer Matt Torok
c/o Eric Kueffner
Faulkner Banfield, P.C.
One Sealaska Plaza, Suite 202
Juneau, Alaska 99801
(907) 586-2210

Officer Torok has information about his own actions, those of the other police officers and those of John Shakespeare and Trevor Shakespeare.  The attorney-client privilege applies.

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

9.    Witnesses listed on plaintiffs' witness lists.

10.    Witnesses whose identity is revealed in the course of discovery.

DATED this 23rd day of December, 2005.

FAULKNER BANFIELD, P.C.

Eric A. Kueffner
ABA No. 8411124
Attorneys for City & Borough of Juneau and
Juneau Police Department

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was mailed by first class mail, postage prepaid, this 23rd day of December, 2005, to:

John H. Shakespeare
6590 Glacier Highway # 52
Juneau, Alaska 99801

Eric A. Kueffner

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ◆ Fax: (907) 586-8090

Defendants' Preliminary Witness List
Shakespeare v. CBJ & Juneau Police Dept.

Page 4 of 4
1JU-05-632 CI

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

JOHN H. SHAKESPEARE,

        Plaintiff,

    v.

CITY & BOROUGH OF JUNEAU, JUNEAU      Case No. 1JU-05-632 CI
POLICE DEPARTMENT OFFICERS # OF
FOUR
OFFICER MATT TOROK
OFFICER ROBERT KOLVIG
OFFICER BRIAN DALLAS
OFFICER BEN CORONELL

        Defendants.

## OPPOSITION TO "MOTION FOR SETTLEMENT IN CASE"

Defendants, by and through their counsel Faulkner Banfield P.C., oppose the

motion filed by plaintiff on December 20, 2005, entitled "Motion for Settlement in Case."

Although it is hard to determine what portion of the pleadings are a motion,

memorandum, or attachments, it seems that the "Motion for Settlement" is a request for

an award of $50,000. The Motion appears to be an attempt to move for summary

judgment, since it refers to Civil Rule 56, but no factual or legal support for this request

is provided in any of the documents filed by Mr. Shakespeare.

In the Motion, Mr. Shakespeare alleges that "The CBJ Addmited to and Judge

Ruled Warrantless Entry.   They striped me of my Constitution Rights Given to me By

Alaska Constitution Right Guaranteed under Article 1 Section 14 and 22 of the Alaska

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ♦ Fax (907) 586-8090

constitution Rights to Privicy and United States." [sic] These allegations do not state a claim for which relief may be granted and do not provide any basis for a monetary award of any amount, let alone for fifty thousand dollars.

In fact, the events described in the Motion and the exhibit attached to this opposition provide a basis for this court to dismiss plaintiff's case. "Summary judgment, when appropriate, may be rendered against the moving party."[1] Mr. Shakespeare has based his claim entirely on alleged breaches of the constitution even though Alaska has not recognized direct constitutional tort claims based on violation of the state constitution.[2] He therefore has not stated a claim for which relief may be granted. Furthermore, to the extent that Mr. Shakespeare has alleged § 1983 claims, the Defendants are entitled to qualified immunity for their actions.

Police officers are immune from suits for damages if they reasonably believe that their actions are lawful in light of clearly established law and the information they possess.[3] Immunity should be decided at the earliest possible stage of litigation and summary judgment is proper if a defendant is obviously immune.[4] In this case, the entry by CBJ police officers into Mr. Shakespeare's house was undertaken only after

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

---

[1] Alaska R. Civ. P. 56(c).

[2] *Thoma v. Hickel*, 947 P.2d 816, 824 n.5 (Alaska 1997); *see also Brown v. Ely*, 14 P.3d 247, 261 (Alaska 2000).

[3] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

[4] *Hunter v. Bryant*, 502 U.S. at 227; *Van Sandt v. Brown*, 944 P.2d 449, 451 n.4 (Alaska 1997).

consultation with the district attorney.[5] Although the evidence obtained by the officers was suppressed, the District Court Judge specifically found that the officers were acting in good faith when they entered Mr. Shakespeare's house.[6]

This explicit judicial finding was made after full briefing on the subject and an evidentiary hearing at which both sides were afforded due process. Based on this finding, there is no question that a reasonable officer could have believed that the entry into Mr. Shakespeare's home was lawful. As a result, the police officer defendants are entitled to qualified immunity for their actions. Such immunity is available regardless of whether the acts complained of were lawful or not.[7] The purpose of immunity is to provide protection for good faith acts, even of they are ultimately found to be improper. Thus, the Juneau police officer defendants are immune from the claims lodged in the complaint and reiterated in the Motion for Settlement.

/

/

/

/

---

[5] See Log Notes of Evidentiary Hearing attached as Exhibit A, p. 2.
[6] Exhibit A, p. 4.
[7] Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

For all of these reasons, the Motion should be denied, and summary judgment should be granted in favor of the defendants.

DATED this 3rd day of January, 2006.

**FAULKNER BANFIELD, P.C.**

Eric A. Kueffner, ABA No. 8411124
Attorneys for City & Borough of Juneau and
Juneau Police Department

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was mailed by first class mail, postage prepaid, this 3rd day of January, 2006, to:

John H. Shakespeare
6590 Glacier Hwy., #52
Juneau, Alaska 99801

Eric A. Kueffner

22494

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ◆ Fax: (907) 586-8090

In the District Court for the State of Alaska at Juneau

| | | | |
|---|---|---|---|
| **Media No.:** | 1JUB03-233 | **Judge:** | PBF |
| **Date:** | Monday, November 17, 2003 | **Clerk:** | Cab |
| **Plaintiff:** | State vs. | | |

**Defendant's Name:** Trevor Shakespeare   **Case No:** 1JU-03-1286 CR   **DOB:** DisplayText canr   **Address:** [Enter Defendant's Address]

**Type of Proceedings:** Evidentiary Hearing

**Counsel Present:**   Plaintiff:   District Attorney-Gullufsen
Defendant:   Public Defender-Hedland

**Defendant:** Present

| | |
|---|---|
| **Bail Set/Continues:** | [Enter Text] |
| **Transport Order:** | [Enter Text] |
| **Other Court Orders:** | [Enter Text] |

| Next Court Date(s) and Time(s): | Type of Hearing(s): | Location: |
|---|---|---|
| [Enter Date] | [Enter Hearing Type] | [Enter Location] |

**Summary of Proceedings: Grant Motion To Suppress/ Pre-Trial Hearing on 1-12-04 @ 3:00 pm & Jury Trial on 1-20-04 @ 8:15 am**

| | |
|---|---|
| 9:36:48 AM | Case Called |
| 9:39:34 AM | **Oath – Robert Kolvig** |
| 9:40:50 AM | **District Attorney- direct exams Robert Kolvig**<br>I work for JPD officer for over 17 ½ years. On 1-19-03, I responded to a report of an accident. Got information a person ran from a van running through Switzer trailer court. Witnesses said he was injured. I proceeded to trailer #52. Office Torok was at the scene. John Shakespeare lived at trailer #52. Officer Dallas and Sergeant Coronell arrived. I was the officer at the front door, entry to the trailer. The interior of trailer was dark. I shined my flashlight in a window. I saw a person on the floor. I knocked on door but I couldn't get that person to wake up. I knew the person as Trevor Shakespeare. I noticed John Shakespeare stood up in the house. I got his attention to open the door. He said he wasn't going to open the fucking door. I continued to ask him to open the door. I said someone got into his trailer and the person my be injured. I told him this several times. I told him Trevor may be injured. John was also yelling at Officer Torok. John came over to the door. I could hear him whisper to Trevor. I told John Trevor had wreck his van. I said the van could be possibly totaled. John said his van was in the driveway and Trevor didn't drive his van. I believed at that point Trevor was injured. I couldn't get a response from Trevor while he was leaning on the doorway. We got information from Officer Torok and Sergeant Coronell that the District Attorney said we could brake open the door. I kicked open the door. |
| 9:50:15 AM | Myself and Sergeant Coronell entered the residence. John was very irritated. and yelling at us. I put John in handcuffs for my protection and his. Trevor got up and ran down the hallway. Trevor was saying something about his leg being broke. I believe an ambulance was called. I did take the handcuffs off John. I never arrested John. |
| 9:53:02 AM | Officer Kolvig draws diagram of Trailer #52 |

Exhibit   A
Page   1   of   5

**Public Defender-cross exams Robert Kolvig**
There were Officers on the outside. I don't know where they all were. Before I got to Switzer #52 I had talked to dispatch. When we arrived at the scene we got information the person who drove the van limped off the trailer #52. I believe Officer Torok spoke to the witnesses. I don't believe I took pictures of the van. At the time I didn't no the van was wrecked. I was wearing a tape recorder at the event. I did not record it. There were 4 officers at the scene. Dispatch said person leaving the scene may have been injured. I left the station knowing that someone was running from this wreck van and the person could possibly be injured. I have my own personnel cell phone. I use it while I'm at work. When I got to the front door I spoke to Officer Torok. I shined my flashlight through the window. I know Trevor from criminal contact and also John Shakespeare. I attempted to get the person leaning against the door to open the door. John told me I couldn't come in. I believe he told me to get a warrant. I told him at one point that the van was totaled. I lied to him to open the door knowing how much he cared for his vehicles.

10:08:34 AM   There were times I was talking to John and so was Officer Torok. I told John we think Trevor is hurt. Ten to 15 minutes passed before I kicked in the door. I did not call a judicial officer or the District Attorney that night. I did not have pepper spray in my hand. The first thing I saw was John Shakespeare screaming. I didn't see Trevor crawl into the kitchen. I did not tackle John. I did handcuff him. I did not have contact with Trevor. I was at the police station writing reports that night.

10:15:16 AM   **COURT:**    - What he was doing before the call isn't relevant. – objection is sustained

10:15:47 AM   I didn't do any follow up on this case. Sergeant Coronell assisted me with John Shakespeare.

10:17:04 AM   **District Attorney- redirects Robert Kolvig**
I was told the driver of the van could be injured. A person was leaning against the door.

10:18:42 AM   **Oath – Matthew Torok**

10:19:07 AM   District Attorney- directs exam Matthew Torok
JPD officer for over 3 years. I was dispatched to a vehicle accident. I was at the station when I was dispatched to the accident. There was about 100 feet of skid marks. Two juveniles at the scene said the driver left the scene and was limping to #52 trailer at Switzer. I asked them to go with me and show me where the driver went. Officer Kolvig and I approached the trailer where John Shakespeare lived. Noticed through the window Trevor was talking to John. John was yelling. Officer Kolvig was by the front door and I was by the windows. I was looking into a different window then Officer Kolvig. I was trying to talk to John. John was saying fuck off. At some point Trevor and John went to the kitchen. I could see Trevor's legs. He wasn't moving for about 10 minutes. Numerous times I said we need to check on Trevor. Told John to check on *Trevor*. He said no I am going to bed and he laid down on the couch and closed his eyes. I then called District Attorney officer to let him know about the situation. I Waives attorney told we could go in because of medical conditions. Sergeant Coronell told John he has 3 seconds to open the door or we would kick it in. He counted to 3 and we went into the door. Trevor went into the bathroom. He was yelling his ankle was broken, don't touch me. We put Trevor into handcuffs and had an ambulance come and take Trevor to hospital. The 2 witnesses looked at Trevor's face and identified him as the drive of the van. There was alcohol in the van. I received a search warrant for Trevor's medical records at BMH. I believe Officer Vinson got the search warrant.

10:29:49 AM   **Public Defender- cross exams Matthew Torok**
Officer Vinson would of got the search warrant at my request. I got the search warrant on 7-28-03. Someone called dispatch about a vehicle accident. This was on Renninger Drive. The witnesses didn't say the person looked injured. I didn't know he was injured. The kids came up

to me right away. I believe they said they saw the driver of the van and there was an accident and they knew where he went. I believe Officer Dallas took pictures of the van. I believe I took pictures of alcohol. Officer Kolvig and I went to the front door. Was reported they saw driver running and staggering away. Officer Dallas and Sergeant Coronell arrived. I used a tape recorder that night.

10:40:37 AM     Public Defender- plays Officer Torok's tape of that night

10:41:58 AM     John said several times you can't come in. I might of turned the tape recorder off when I called Mr. Svobodny. I was shining my flashlight into the window and John was getting irritated because I was doing that. We didn't have any information about Trevor having a hurt ankle before we went in. Sergeant Coronell suggested I call the District Attorney. I told him there was possibly an injured person and we wanted to go in. I told him who it was. I believe Officer Kolvig kicked down the door and was the first one into the residence. Trevor was moving quickly to the bathroom. Trevor started yelling and screaming that his ankle was broke. We put him into handcuffs and called for the ambulance. I believe I told him I didn't believe his ankle was broken. The issue about his broken ankle didn't come up until after we broke into the trailer.

10:52:48 AM     **District Attorney – re directs Matthew Torok**
In my report the juveniles didn't indicate he was running. It takes a period of time to get a search warrant from a judge. I told Mr. Svobodny that Trevor Shakespeare wasn't moving for about 10 minutes. Call the District Attorney under unusual circumstances.

10:56:02 AM     **Off/on record**

11:02:46 AM     **Oath – Brian Dallas**

11:03:11 AM     **Public Defender- direct exams Brian Dallas**
I am a JPD officer for over 4 years. On 7-19-03 there was a vehicle accident where the driver fled into Switzer trailer park. I was in the Lemon Creek area when I responded to the call. There was description given over the radio of the driver by Officer Torok. I drive by the van on my way to the trailer park. The juveniles knew the trailer not the number. I didn't see any significant damage to the van when I drove by. I believe Officer Torok was the first officer to arrive then me and Officer Kolvig arrived 2 minutes later. I heard the juveniles said the driver had an orange shirt on but took it off. I knew the driver fled the scene of an accident. I located the driver's t-shirt. I believe Officer Coronell took photographs of the van. The van was close to the telephone pole. It didn't look like there was impact. I didn't look at the wind shield. I heard John Shakespeare conversing. He leaned up against the window and said what are you guys doing here, get out of here. I didn't go into any of the bedrooms. I went into the bathroom. I believe there was a back door.

11:14:46 AM     Remember saying the van came back registered as John. He said his van was in the driver way. We said no its not there. Told him to come and look but he didn't. I had been at John Shakespeare's trailer before, probably 3 to 6 times. I believe I had the pepper spray my hand when we entered the trailer. Officer Torok asked John to check on Trevor. I definitely heard John. I saw Trevor slumped into the kitchen. I didn't write a police report. I wasn't a primary officer. I was there regarding someone fleeing from an accident. I didn't search the house. I didn't tape record when I was there.

11:22:26 AM     **Oath – Benjamin Coronell**

11:22:57 AM     **Public Defender- direct exams Benjamin Coronell**
I am a Sergeant with JPD. I arrived to Switzer #52 regarding an accident on 7-19-03. I took one quick look at the van before I drove up to #52. I knew it was John Shakespeare's van. There was

Exhibit A

2 patrol cars prior to my arrival. I think Officer Kolvig was the last one there. I asked Officer Torok what happened. We watched through the bay window. The officer's said they didn't see Trevor move when they were there. We were trying to get entry into the trailer. I had a conversation with Officer Torok about him calling Rick Svobodny. The concern was to see if Trevor was hurt. At the time I looked at the van it looked like it struck the light pole. I did not hear the conversation Officer Torok had with Rick Svobodny. I was talking to John Shakespeare. John had a tape recorder. John was complaining when being handcuffed. I told him to calm down and I would have the cuffs removed. I walked back into the trailer to assess the situation with Trevor. I heard Trevor screaming about his ankle. I believe he was handcuffed. I believe a took pictures of the van. The outside of the van didn't appear to be damaged. I believe the window was cracked. I didn't find any keys. John Shakespeare requested we look for keys. John requested we get his father there. John told us to get a search warrant to go into his place.

| | |
|---|---|
| 11:35:16 AM | **District Attorney- cross exams Benjamin Coronell**<br>There seemed to be some sort of crack in the wind shield |
| 11:36:05 AM | **Oath – Richard Svobodny** |
| 11:36:38 AM | **Public Defender- direct exams Richard Svobodny**<br>I recall getting a call from Officer Torok about a motor vehicle accident in July. They are encouraged to call to see if they need a warrant. Most often do we have probable cause. It depends upon the facts to the advise I give them. I am aware of many different cases about emergency aid doctrine. |
| 11:40:46 AM | **District Attorney- object to this line of questioning** |
| 11:41:26 AM | Public Defender- responds |
| 11:41:55 AM | **COURT**:   - sustain objection |
| 11:42:56 AM | I told Officer Torok under the circumstances described emergency aid doctrine applied. |
| 11:44:40 AM | Public Defender- Closing argument |
| 11:51:36 AM | District Attorney- Closing argument |
| 11:56:24 AM | Public Defender- Rebuttal |
| 11:59:36 AM<br>12:02:25 PM | **COURT**:   -<br>Goes over decision on record – Grant motion by Public Defender / State's case fails on 2nd prong / Officers were primary motivated to investigate a DUI. Grant motion to suppress evidence as to gaining entry and to the blood test. This doesn't included evidence of the vehicle. Believe the officers were acting in good faith. |
| 12:11:19 PM | District Attorney- We will be relaying on observations prior to entry. We are ready to go to trial. |
| 12:12:33 PM | Public Defender- We would rather have the trial in January. We will waive Rule 45. |
| 12:12:53 PM | District Attorney - Object to January |
| 12:13:09 PM | Defendant – I agree to waive my speedy trail rights. |

Exhibit ___A___   Page 4 of 5
Page __9__ of 5

12:14:53 PM | **COURT:**    - **Jury Trial on 1-20-04 @ 8:15 am & Pre-Trial Hearing on 1-12-04 @ 3:00 pm**
**Signature bond and release conditions are continued.**

12:15:47 PM | **Recessed**



Exhibit ___A___
Page _5_ of _5_

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

JOHN H. SHAKESPEARE,

        Plaintiff,

    v.

CITY & BOROUGH OF JUNEAU, JUNEAU        Case No. 1JU-05-632 CI
POLICE DEPARTMENT OFFICERS # OF
FOUR
OFFICER MATT TOROK
OFFICER ROBERT KOLVIG
OFFICER BRIAN DALLAS
OFFICER BEN CORONELL

        Defendants.

## OPPOSITION TO
### "MOTION FOR: All Police Reports, Field Recording, And Pitchers, And hand written hand notes of the Night of 7-19-2003"

On December 23, 2005, Plaintiff John Shakespeare served on counsel for the

defendants a document dated December 20, 2005 and entitled "MOTION FOR:" It

contains the following words:   "All Police Reports, Field Recording, And Pitchers, And

hand written hand notes of the Night of 7-19-2003  1JU-S03-1286 CR as described on

CD 1JU-803-233."   If these sentence fragments constitute a motion, there is no

supporting memorandum for it, as required by Civil Rule 77(b)(2).  It is therefore

impossible to tell what the basis for the motion may be.  The document appears to be a

motion to compel production.  If that is what it is, then it has a number of flaws, all of

them fatal.  First of all, the defendants already produced all relevant police reports and

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

field recordings to Mr. Shakespeare on December 14, 2005. No pictures related to Case No. 1JU-S03-1286 CR were produced because defendants do not have any and none are known to exist. Secondly, Mr. Shakespeare has never made any discovery requests for the materials he now appears to be demanding. Thirdly, Mr. Shakespeare has never made any good faith attempt to resolve any discovery disputes, as required by Civil Rule 37(a)(2)(B), prior to bringing his motion.

For all of these reasons, defendants oppose the "motion." The defendants have provided, in their initial disclosures on December 14, 2005, all of the police reports, documents, and cassette recordings that are relevant to the matters alleged with particularity in Mr. Shakespeare's pleadings. If Mr. Shakespeare has some specific discovery requests to make, he should direct them to counsel for the CBJ, and should not continue to file ambiguous, premature, and ill-founded motions with the court.

DATED this 3rd day of January, 2006.

FAULKNER BANFIELD, P.C.

Eric A. Kueffner, ABA No. 8411124
Attorneys for City & Borough of Juneau and
Juneau Police Department

I certify that a true and correct copy of the foregoing was mailed by first class mail, postage prepaid, this 3rd day of January, 2006, to:

John H. Shakespeare
6590 Glacier Hwy., #52
Juneau, Alaska 99801

Eric A. Kueffner

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ♦ Fax (907) 586-8090

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

JOHN H. SHAKESPEARE,

        Plaintiff,

    v.

CITY & BOROUGH OF JUNEAU, JUNEAU
POLICE DEPARTMENT OFFICERS # OF
FOUR
OFFICER MATT TOROK
OFFICER ROBERT KOLVIG
OFFICER BRIAN DALLAS
OFFICER BEN CORONELL

        Defendants.

Case No. 1JU-05-632 CI

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This case should be dismissed because the defendants are immune from suit under

the doctrine of qualified immunity. In addition, Alaska law does not recognize a cause of

action for damages for a violation of constitutional rights, which is the only claim alleged

in the complaint.

Mr. Shakespeare alleges that he is entitled to money damages because the

defendant police officers violated his constitutional rights when they entered his home

without a warrant on the night of July 19, 2003. Officer Matthew Torok was on duty that

night when he received a call from the dispatcher shortly before midnight, reporting a

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 207, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

1  single vehicle accident in the Lemon Creek area.[1]  When he arrived on the scene, he saw

2  a van that had skidded off the road.  Two witnesses approached him and said that they

3  had seen the driver of the van, a white male wearing a pair of blue jeans and no shirt,

4  leave the accident scene and stagger into a nearby trailer home.  These witnesses led

5  

6  Officer Torok to the trailer, which was the home of Mr. Shakespeare.  They were joined

7  there by Sergeant Coronell and Officers Dallas and Kolvig.  Through the window,

8  Officer Torok recognized John Shakespeare and heard John Shakespeare yelling at

9  someone sitting on the floor.  The person on the floor was Trevor Shakespeare, a white

10  

11  male clad in only blue jeans and missing his shirt.

12        Officer Torok knocked on the door and asked to come in.  He explained that

13  Trevor Shakespeare had just been involved in an accident and the police needed to talk to

14  him.  The officer asked John Shakespeare to check on Trevor, who had now moved to the

15  

16  kitchen, but who did not appear to be moving.  John Shakespeare refused, and lay down

17  on the couch.  All of this could be seen by the officers through the window or door of the

18  trailer home.  Officer Torok was unsure what to do, so after seeing that Trevor

19  Shakespeare did not move for approximately ten minutes, Officer Torok telephoned

20  

21  District Attorney Rick Svobodny to ask for advice.  The officer explained the situation

22  and the District Attorney advised him that the officers should enter the home to insure

23  that Trevor Shakespeare was not injured.

24  

25  [1] All of the facts described in this section are supported by the attached affidavit of
Matthew Torok.

The officers told John Shakespeare that they intended to enter the house, and gave John Shakespeare three seconds to open the door and let them in. When he did not let them in, they broke down the door and came in anyway. At that point, Trevor Shakespeare got up and moved into the rear bathroom, screaming that his ankle was broken. The officers called for medical assistance and Trevor Shakespeare was taken to the hospital. In the meantime, Officer Kolvig restrained John Shakespeare, who had gotten up from the couch and started yelling at the officers.

Trevor Shakespeare was charged with Driving Under the Influence and ultimately convicted after a trial in Juneau District court. Prior to his trial, he brought a motion to suppress the evidence obtained as a result of the warrantless entry into John Shakespeare's house. Judge Peter Froelich granted the motion, saying that the search did not satisfy the three-pronged test for the "emergency aid" exception to the Alaska law governing search warrants.[2] Judge Froelich did state, however, that "the officers were probably acting in good faith, and I want to make clear that I don't think that any officers or the sergeant tried to do something wrong here. I think that they weren't sure what to do and I think they wanted to investigate this in the least burdensome way."[3]

Two years after the arrest, John Shakespeare filed a complaint in Superior Court claiming that he was entitled to damages as a result of the actions of the defendants. His complaint alleged that his constitutional rights had been violated. He seeks damages

---

[2] See *Gallmeyer v. State*, 640 P.2d 837, 842 (Alaska 1982).
[3] See Transcript attached as Exhibit A, p. 4.

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

from the CBJ and the individual defendants arising out of the actions taken by CBJ police

officers on the night of July 19, 2003.  The defendants answered the complaint and now

move for summary judgment of dismissal.

## II.     DISCUSSION

### A.     Summary Judgment Standard

Under Alaska Rule of Civil Procedure 56(b), a party against whom a claim is

asserted may at any time move for summary judgment.  The rule provides that "judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law."[4]

Mere conclusions in pleadings are insufficient for denial of a motion for summary

judgment.[5]  Once the moving party has shown that there is no genuine dispute, the non-

moving party must set forth evidence of specific facts showing the existence of a genuine

issue for trial.[6]  Summary judgment is appropriate if there are no genuine issues of

material fact such that the moving party is entitled to judgment as a matter of law.[7]

### B.     Qualified Immunity

There is no genuine dispute that Mr. Shakespeare's suit against the CBJ and its

police officers is barred by the doctrine of qualified immunity.  Such immunity protects

---

[4] Alaska R. Civ. P. 56(c); *Semlek v. National Bank of Alaska*, 458 P.2d 1003, 1005-1006
(Alaska 1969).

[5] **Williams v. City of Valdez**, 603 P.2d 483, 489 (Alaska 1979).

[6] *Lynden v. Walker*, 30 P.3d 609, 612 (Alaska 2001).

[7] *Bennett v. Hedglin*, 995 P.2d 668, 671 (Alaska 2000).

Memorandum in Support of Motion for Summary Judgment                    Page 4 of 11
Shakespeare v. CBJ & Juneau Police Dept.                               1JU-05-632 CI

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ♦ Fax: (907) 586-6090

government officials who are alleged to have violated constitutional rights.  The United

States Supreme Court outlined the contours of qualified immunity for federal officials

who are alleged to have made unlawful searches in the case of ***Anderson v. Creighton***[8]

In ***Anderson***, an FBI agent conducted a warrantless search for drugs and was sued for

money damages.[9]   The Supreme Court held that the agent was entitled to summary

judgment on qualified immunity grounds if he could establish as a matter of law that a

reasonable officer could have believed that the search comported with the Fourth

Amendment even though it actually did not.[10]

The recent United States Supreme Court case of ***Saucier v. Katz***[11]  discusses how

to apply the holding in ***Anderson*** and how to determine whether a governmental official

is entitled to qualified immunity.  ***Saucier*** involved a suit by Elliot Katz against Donald

Saucier, a military policeman who arrested Katz at a protest rally.  Katz accused Saucier

of using excessive force in the arrest, in violation of the Fourth Amendment.  The

Supreme Court held that Officer Saucier was immune from suit.

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

---

[8] 483 U.S. 635 (1987).

[9] This type of claim is known as a ***Bivens*** action, named after the case of ***Bivens v. Six Unknown Fed. Narcotics Agents,*** 403 U.S. 388 (1971). As discussed below, a ***Bivens*** action is not available under Alaska law.

[10] ***Anderson v. Creighton***, 483 U.S. at 641. See also 483 U.S. at 646 fn. 6 ("on remand, it should first be determined whether the actions the Creightons allege Anderson to have taken are actions that a reasonable officer could have believed lawful.   If they are, then Anderson is entitled to dismissal prior to discovery.")

[11] 533 U.S. 194 (2001).

In deciding in favor of the Officer Katz, the Supreme Court first noted that the threshold issue in any qualified immunity dispute is whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right.[12] If the answer to this threshold question is yes, then there must be a particularized inquiry on whether it was a clearly established right. It is not enough to say that the Fourth Amendment is a clearly established right. Rather, the court must ask whether it would be clear to a reasonable officer that the conduct was unlawful in the precise situation he confronted.[13] "The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."[14]

What that meant in the context of the *Saucier* case was that even if the officer had used excessive force in arresting Mr. Katz, the officer was entitled to qualified immunity because in the particular circumstances of the case, his mistaken belief about the need for such force was reasonable. As applied to Mr. Shakespeare's claim, the fact that Judge Froelich found that the warrantless entry into his house violated the Fourth Amendment does not mean that the officers who conducted that search are not entitled to qualified immunity. As the Supreme Court explained in *Saucier*, "even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless

---

[12] *Saucier v. Katz*, 533 U.S. at 201, citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).
[13] *Saucier v. Katz*, 533 U.S. at 202. See *Wilson v. Layne*, 526 U.S. 603, 615 (1999).
[14] *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions."[15]

In other words, the standard for determining qualified immunity is not the same as the standard for measuring whether a search violates a constitutional right. As the *Saucier* court observed:

> We acknowledged there was some "surface appeal" to the argument that, because the Fourth Amendment's guarantee was a right to be free from "unreasonable" searches and seizures, it would be inconsistent to conclude that an officer who acted unreasonably under the constitutional standard nevertheless was entitled to immunity because he " 'reasonably' acted unreasonably." 483 U.S., at 643, 107 S.Ct. 3034. This superficial similarity, however, could not overcome either our history of applying qualified immunity analysis to Fourth Amendment claims against officers or the justifications for applying the doctrine in an area where officers perform their duties with considerable uncertainty as to "whether particular searches or seizures comport with the Fourth Amendment." *Id.,* at 644, 107 S.Ct. 3034. With respect, moreover, to the argument made in *Anderson* that an exception should be made for Fourth Amendment cases, we observed "the heavy burden this argument must sustain to be successful," since "the doctrine of qualified immunity reflects a balance that has been struck 'across the board.' " *Id.,* at 642, 107 S.Ct. 3034 (quoting *Harlow v. Fitzgerald, supra,* at 821, 102 S.Ct. 2727). We held that qualified immunity applied in the Fourth Amendment context just as it would for any other claim of official misconduct. 483 U.S., at 644, 107 S.Ct. 3034.[16]

The constitutional rights afforded by the Alaska Constitution that Mr. Shakespeare alleges were violated by the officers in this case are analogous to the Fourth Amendment rights construed in *Anderson* and *Saucier*. And for the same reasons that the United State Supreme Court held in those cases that the government officials would be entitled

---

[15] *Saucier v. Katz,* 533 U.S. at 206.
[16] *Saucier v. Katz,* 533 U.S. at 203.

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax (907) 586-8090

to qualified immunity, these Juneau police officers should be entitled to immunity as well. The crux of the matter is the precise way in which police officers must apply the law of search and seizure under the stress of actual practice in the field. The specific circumstances here consist of an officer who saw an accident victim lying inside a house without moving for ten minutes.[17] The officer calls a district attorney for advice on whether there is an emergency that would justify an immediate entry. The district attorney tells the officer that he should enter the house without a warrant, and the officer does so. Later, after an evidentiary hearing in which all parties have an opportunity to be heard, the judge rules that the search was unlawful, but in doing so, he also notes that "the officers were probably acting in good faith, and I want to make clear that I don't think that any officers or the sergeant tried to do something wrong here. I think that they weren't sure what to do and I think they wanted to investigate this in the least burdensome way."[18]

Mr. Shakespeare does not have the clearly established constitutional right to be free from a search conducted in good faith under these circumstances. Police officers who seek and obtain a legal opinion on whether an emergency search is permissible, and then act in accordance with that advice, are not violating a clearly established constitutional right. This is precisely what the *Saucier* court had in mind when it observed that "the relevant dispositive inquiry is whether it would be clear to a

---

[17] See attached Affidavit of Matthew Torok, para. 7.
[18] See Transcript of Hearing, attached as Exhibit A, p. 3.

reasonable officer that the conduct was unlawful in the situation he confronted."[19]  Given the uncontrovertible facts in the record, it would have been unreasonable for the officers **not** to have entered Mr. Shakespeare's home under the circumstances.

The hindsight afforded by Judge Froelich's subsequent judicial review at the suppression hearing concluded that the defendant officers here may have made a reasonable mistake, but the Juneau District Court nonetheless held that they were acting in good faith, and the law of qualified immunity protects officers who make such mistakes.[20]  Furthermore, Judge Froelich's comments show a clear understanding of the difficulty faced by officers who were forced to make an on-the-spot determination about whether they should risk harm to Trevor Shakespeare by waiting to obtain a warrant.  The judge's observations about the officer's good faith can also assist this court in making a decision about qualified immunity.

A ruling on immunity should be made at an early stage, in order to avoid unnecessary litigation.[21]  The whole point of immunity is that it is more than a defense to a suit – it is an entitlement not to stand trial.[22]  This court can and should resolve the question of immunity before any more effort is expended in pursuing or defending

---

[19] *Saucier v. Katz*, 533 U.S. at 195.

[20] "Yet even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." *Saucier v. Katz*, 533 U.S. at 206.

[21] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Van Sandt v. Brown*, 944 P.2d 449, 451 n.4 (Alaska 1997).

[22] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ♦ Fax (907) 586-8090

against the complaint in this action.  The defendants are entitled to immunity from this

lawsuit and are entitled to a summary judgment to that effect.

## C.    No Action Under Alaska Law for Purely Constitutional Claims

Even if this court determines that the defendants are not entitled to qualified

immunity, summary judgment should be granted in their favor because Mr. Shakespeare

has not stated a claim for which relief may be granted.  His complaint is based upon a

claim for money damages based entirely on violations of constitutional rights.  Such a

tort has never been recognized under Alaska law.  The actions brought by the plaintiffs in

the federal lawsuits in *Anderson* and *Saucier* were both *Bivens* claims.  Under the ruling

in *Bivens*, money damages are available in federal actions for the breach of rights

protected under the federal constitution.[23]  Alaska, on the other hand, despite repeated

invitations to do so, has refused to recognize direct constitutional tort claims based on

violation of the state constitution.[24]  Mr. Shakespeare's claim for damages under the

Alaska Constitution should therefore be dismissed.

## III.    CONCLUSION

There is no genuine dispute about the material facts in this case.  As set forth in

the attached affidavit of Officer Torok, the officers who entered Mr. Shakespeare's home

on the evening of July 19, 2003 did so in the good faith belief that they were acting under

the emergency aid exception to the warrant requirement.  Although Judge Froelich

---

[23] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971).

[24] *Thoma v. Hickel*, 947 P.2d 816, 824 n.5 (Alaska 1997); *see also Brown v. Ely*, 14 P.3d 247, 261 (Alaska 2000).

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

subsequently determined that this exception was not applicable, the officers are still

entitled to qualified immunity from a suit based on their actions.  Even if the defendant

officers were not immune, the cause of action alleged in the complaint is not cognizable

under Alaska law.  For all of these reasons, the defendants are entitled to summary

judgment and the complaint in this action should be dismissed.

DATED this 13th day of January, 2006.

**FAULKNER BANFIELD, P.C.**

Eric A. Kueffner
ABA No. 8411124
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I certify that true and correct copies of the Memorandum in Support of Motion for Summary Judgment and Affidavit of Matthew Torok were mailed by first class mail, postage prepaid, this 13th day of January, 2006, to:

John H. Shakespeare
6590 Glacier Hwy., #52
Juneau, Alaska 99801

Eric A. Kueffner

22494

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

IN THE DISTRICT COURT FOR THE STATE OF ALASKA
AT JUNEAU

STATE OF ALASKA )
)
           Plaintiff, )
)
vs. )
)
TREVOR SHAKESPEARE )      Case No. 1JU-03-1286 CR
)
           Defendant )
)

<u>November 23, 2003 Transcript of Hearing</u>

{transcribed by Faulkner Banfield}

<u>JUDGE</u>

    Alright, thanks.

    Well, I haven't traced through, as Mr. Gullufsen has, from the Meyers case, the Gallmeyer case, and the Harrison case -- the Harrison case is the main case that I've looked at. And the context that we're given is that, the starting point, warrantless entry, is per se unreasonable unless it's within one of the limited exceptions to the warrant requirement. One of those, and there's a list, of course, and one of them is exigent circumstances, which is when evidence may be destroyed, and that's not what we're talking about here as far as I can tell from what anything that either side has said or written. Another one is the emergency aid doctrine, and that is what we're talking about. What we -- in applying these three things, which Justice Rabinowitz listed originally, and then they kind of came to us through Gallmeyer to the Harrison case and the Harrison decision from 1983 was the most recent listing, we're to use objective test to determine whether the officers at the time had information that would make them think there was an emergency, and that they had to act to prevent death or potential damage injury to life or property.

And the second one, and that's mostly what we're focusing on, as had been said, whether there was a primary motivation to arrest or seize evidence.

And the third one that there has to be some probable cause to associate the emergency with the place, and that, of course, is not an issue here. There was a good reason to believe that the driver of the van was in this trailer. So, all things considered, and I mean it's difficult to say well we're not using totality of circumstances, everything that's been testified to here indicates that the officers were concerned about the driver having left the scene, possibly being intoxicated, and maybe being hurt.

There wasn't a lot of evidence on whether they thought he was hurt. We know and I'll find that they thought he ran, went by foot, and fled quickly. The word "ran" was used and then when we analyzed it and when witnesses were asked more closely, they said, "well, he moved quickly" and so on, but I think it's quite a bit different than the Harrison case because of that and because Mr. – Trevor Shakespeare's father, John Shakespeare, was there. And the officers knew he was there. There was no indication that he was unable or unwilling – Mr. Gullufson said in his argument that John Shakespeare was unwilling to take responsibility or to help Trevor, and I didn't hear any of that. There wasn't anything about his being incapacitated, just that he was angry and protecting his privacy rights, or his understanding of them.

So, I guess, I think – well to get to the bottom line, I'm going to grant the motion and it's not something that I do lightly, because I think we do want to encourage police to help people, as Mr. Gullufson said, but we're talking about life, and I don't think it was an exaggeration, but the Courts, Justice Rabinowitz, and all the courts that have looked at this, say protection of life and property, and the worst that we've heard is maybe there was an injured ankle, somebody that was running, somebody who had a father there to protect him, or to help him get medical aid, or to do whatever was necessary.
So I think the State's case fails even on the first prong, but I think certainly on the second prong.

This is a lot different than somebody passed out at a table. I looked at the Harrison decision again. I don't know what the warrant, it doesn't really seem to say whether the warrant that the trooper had, the arrest warrant, was for Harrison or not, although if it was then I'm not sure why she was concerned about going in, so that's probably why Mr. Hedland may have assumed that, but in any event, somebody passed out could be dead, and there was no indication that Harrison wasn't dead, just a lot of stuff around of him, some of which she could see but not all, and he was nonresponsive.

Here in Mr. Shakespeare's case, there's no indication that he was passed out or possibly dead. He was – they heard him talking, they saw him moving. For about ten minutes he wasn't moving, and maybe he had passed out or had fallen asleep. Or maybe he was resting or he was laying on the floor. Maybe he was trying to get out of his dad's way. But there wasn't any reason for officers to think he was dying or had died. So quite a bit different than Harrison who had nobody there with him. I think there is a lot of indication here that the officers here were primarily motivated here by an intent to investigate a DUI.

So for those reasons, based on the Harrison case, the definitions or the requirement for the emergency aid doctrine, in making these findings, I'm going to grant the motion to suppress the evidence that was gained after entry, and that includes – well, I think it should include the blood evidence from the hospital because he – there may be an issue actually of whether he would've gone to the hospital later, but we don't know that but we know that the reason he went to the hospital to have blood taken was because of this entry.

It does not include evidence from the vehicle, because that was not affected by this warrantless entry into the home, and I think it hasn't been litigated but I think there was probably other bases for taking that evidence and entering that vehicle. So there still may be sufficient evidence to try the DUI charge, there's certainly sufficient evidence to try the driving with revoked license charge that's been brought, and there may be evidence to prosecute a charge of leaving the scene of an accident. That charge has not been brought yet. I guess I should also – another reason why this is somewhat problematic and

unusual, I mean, I don't think there's anything wrong certainly with the police calling the district attorney on a call, that's also, as Mr. Gullufson said, something that's to be encouraged.

As to whether they should ask for a warrant, whether they need a warrant, whether they have enough probable cause to get a warrant, all of those things. But I don't think Mr. Svobodny's advice, which I think was based upon incomplete facts, not everything being told to him. That certainly doesn't change – it means that the officers were probably acting in good faith, and I want to make clear that I don't think that any officers or the sergeant tried to do something wrong here. I think that they weren't sure what to do and I think they wanted to investigate this in the least burdensome way. And I think that maybe there was some general reluctance to call the duty judge, and I don't know who it was and I don't think it was me, but I haven't even checked to find out, but that just what, you know, we're all – there a DA on call, there a judge on call, and while we don't want to encourage lots of calls in the middle of the night, this one wasn't that late, I guess it was before midnight, but even if it's three in the morning, if there's a reason for a warrant call, that's why we're on call. And it sounds like there was sufficient evidence for a warrant here and it also sounds like, in terms of there not being exigent circumstances that Mr. Shakespeare, Trevor Shakespeare, probably wouldn't have been allowed to leave because of the officers being there. And there would've been plenty of time to get a warrant within the four-hour testing period, to get a breath test or a blood test.

So, for all of those reasons, then, I'll go ahead and grant the motion and I don't do it lightly, and it's with some reluctance. It's an important right, the right to be free from search and seizure in our homes, without a warrant, unless it clearly falls within one of these listed exceptions. So that means we need to reset a trial date because the trial would have been this week, actually it was going to be prior to this and then the State had asked that it be continued to this week and we did the hearing today instead.

The soonest that we can calendar the trial would be next Monday and the next soonest after that unfortunately because of the holiday schedule would be January 20, so that's roughly a two-month difference. So Monday the 24th of November or Tuesday the 20th of January, those are the trial dates. Now does the State have a preference?

MR GULLUFSEN: No, your Honor. We are going to trial. I want to make – just so I understand, the court's ruling is that evidence observed or taken after the entry into the trailer is being suppressed?

JUDGE: Right. Evidence from the trailer or Trevor Shakespeare, in other words, the blood test at the hospital.

Mr. GULLUFSEN: Yes, because we have observations going into the trailer, discussions between the officers, observations of the officers looking into the trailer that are not the subject of this motion, it's way too late to be litigating that – we will be relying upon those observations prior to entry and all the other information…

JUDGE: That's right, as of the entry, including the blood test, but not including vehicle information or evidence from the vehicle.

I'm talking about observations that the defense has argued and the court has found are consistent with being passed out or sleeping will be – that is before entry.

JUDGE: Any observations made before the entry are not affected by this suppression.

Mr. GULLUFSEN: So we're ready to go to trial.

JUDGE: So Mr. Hedland, as far as the defense is concerned, do you want next Monday?

MR HEDLAND: We'd rather have it in January, your Honor. I believe that the State's still got a bunch of hurdles. It doesn't mean, don't do this.

JUDGE: So, would there be a Rule 45 waiver between Monday and January?

MR. HEDLAND: Sure.

MR GULLUFSEN: We'd object to January. They just want an opportunity to file more suppression…

MR. HEDLAND: I thought that he just said that he had no preference.

MR. GULLUFSEN: I do now. I prefer next Monday to try this case.

JUDGE: What?

MR. HEDLAND: We waive Rule 45 – I'm awfully busy, your Honor, the next couple months.

JUDGE: Trevor Shakespeare, do you agree to waive your Rule 45 rights, your speedy trial rights?

MR. SHAKESPEARE: Yes.

JUDGE: Okay. And the motion deadline has passed on this so, you know, I'm noticing actually in other cases that the deadline seems to be taken lightly but it's not automatic to file a late motion. So,

MR. HEDLAND: Your Honor, can I speak to that briefly? I understand that, I do the best that I can, I have a lot of stuff to do.

JUDGE: It's not directed at you. I don't mean by you – I just mean….

MR. HEDLAND: I really believe that despite the inconvenience it causes people that the case law is unequivocal that if something goes to a constitutional issue, it may be filed at any time before trial. Whether or not the court's going to entertain it…

JUDGE: Okay. There does need to be a motion to file a late motion.

MR. HEDLAND: I'll do my best to avoid having…

JUDGE: And Mr. Hedland, I'm not trying – this is not personal. And as indicated earlier, in something Mr. Gullufsen said, it's not about any individual attorney here when I make a comment on late motions, I didn't actually have you in mind in particular, but just generally the flow of cases, so if the defense is waiving Rule 45, next Monday is pretty short time and it's also going to be a short week with the holidays, and we would give this one priority though because of its age, I'll go ahead and put this on for January 20, over the State's objection, motion deadline is passed, the pretrial hearing is January 12.

So the 12th at 3:00 is the next required appearance and perhaps maybe the ruling today will help get this resolved without trial, otherwise that will be the trial calendar. The signature bond and all release conditions continue and that includes no use of alcohol or other drugs and not being anywhere around alcohol or other drugs. Alright.

22494

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

JOHN H. SHAKESPEARE,

        Plaintiff,

    v.

CITY & BOROUGH OF JUNEAU, JUNEAU      Case No. 1JU-05-632 CI
POLICE DEPARTMENT OFFICERS # OF
FOUR
OFFICER MATT TOROK
OFFICER ROBERT KOLVIG
OFFICER BRIAN DALLAS
OFFICER BEN CORONELL

        Defendants.

**AFFIDAVIT OF MATTHEW TOROK**

STATE OF ALASKA      )
                    )   ss:
FIRST JUDICIAL DISTRICT  )

    Matthew Torok, being first duly sworn on oath, deposes and says:

    1.    I am an officer with the Juneau Police Department and I have personal knowledge of the matters stated below.

    2.    On July 19, 2003, at approximately 11:45 p.m., I was dispatched to Glacier Highway and Renninger Drive to check on a vehicle accident.

    3.    When I arrived on the scene I saw a van on the sidewalk. Leading to the van were about 100 feet of skid marks on the road. Two individuals waved me down and told me that they had witnessed the driver of the van leaving the scene and entering a

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ◆ Fax: (907) 586-8090

trailer home nearby. They said the driver, who was a white male wearing blue jeans but no shirt, was staggering and appeared intoxicated. The witnesses were Timothy Carle and Sean Cropley.

4.      I went up to the home at Space #52 in Switzer Park where Carle and Cropley indicated that the driver had gone. Through the window of the home I could see Trevor Shakespeare sitting on the floor. He is a white male and he was wearing blue jeans and no shirt. John Shakespeare lives in Space #52, and I could see John Shakespeare inside, shouting at Trevor Shakespeare.

5.      I was joined at the scene by Officers Dallas and Kolvig, and by Sergeant Coronell. I knocked on the door and asked John Shakespeare to let us in. I told him that we were investigating a vehicle accident and that Trevor Shakespeare might be injured.

6.      John Shakespeare told us to go away. I continued to look in the window and could see Trevor Shakespeare's legs but not the rest of him. Trevor Shakespeare did not respond to my requests to let us in. John Shakespeare moved to the couch and took no action in response to my request that he check on Trevor Shakespeare, except to give me the finger. John Shakespeare appeared to be intoxicated.

7.      Trevor Shakespeare lay on the floor for approximately ten minutes without moving. I was concerned about Trevor Shakespeare's welfare because he had been in an automobile accident, his father was not moving to assist him, and Trevor did not move or react for about ten minutes despite our attempts to get him or his father to respond.

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-8090

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ◆ Fax (907) 586-8090

8.    I then called Rick Svobodny, the District Attorney on call for that evening, to ask his advice on what we should do. I explained the situation to him and based my actions on his advice. He advised me that based on what I had told him it would be appropriate for us to enter the house to ensure that Trevor Shakespeare was not injured.

9.    I relayed my understanding to the other police officers and Officer Kolvig then advised John Shakespeare that if he did not open the door within three seconds, we would enter the house. John Shakespeare did not open the door, and we kicked open the front door and entered.

10.    When we came into the house, Trevor Shakespeare moved to the rear bathroom, screaming that his ankle was broken. I followed him into the bathroom where I restrained him with handcuffs because he would not calm down. I called Capital City Fire and Rescue to come and pick him up and treat his injuries.

11.    Trevor Shakespeare was taken to Bartlett Hospital, where he was given medical attention. He was subsequently charged with Driving Under the Influence. John Shakespeare was briefly restrained after we came in to his house, but was then released and no charges were filed against him.

12.    I entered John Shakespeare's home on the night of July 19, 2003 as part of my investigation of a vehicle accident involving Trevor Shakespeare. I was concerned about the welfare of Trevor Shakespeare because he had been in an auto accident, he had been seen staggering from the accident scene, he did not move for about ten minutes, and because his father made no effort to attend to his potential injuries.

13.    The reason I called the District Attorney was to get advice on what to do. I had never been in a similar situation and felt that this might be a medical emergency that required immediate attention. As it turned out, Trevor Shakespeare did require medical assistance, but we could not know how much help he needed or how quickly he needed it without getting some cooperation from John Shakespeare or without entering the house quickly to check for ourselves. In seeking advice from the District Attorney and then acting on that advice, I was trying to obtain information that would allow me to act promptly in exercising my duties.

14.    Part of my job as a police officer is to protect citizens from harming themselves or others. I feel that I carried out my job on the night of July 19, 2003 in good faith and without any intent to violate John Shakespeare's rights.

DATED this _13th_ day of January, 2006.

_____
Matthew S. Torok

SUBSCRIBED AND SWORN TO before me this _13th_ day of January, 2006.

_____
Notary Public for Alaska
EXPIRES: 7/19/0P
HEIDI McKEOWN

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone: (907) 586-2210 ♦ Fax: (907) 586-

Affidavit of Matthew Torok
Shakespeare v. CBJ & Juneau Police Dept.

Page 4 of 4
1JU-05-632 CI

Person Filing Proposed Order:

Name: _John H Shakespeare_    Daytime Telephone No. _1-907-209-7425_

Mailing Address: _6590 Glacier Hwy #52 Juneau Ak 99801_

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA AT _Juneau_

_John H. Shakespeare_          )
_____ Plaintiff(s),   )
                                          )
vs.                                       )
_City and Borough of Juneau_             )
_Police Department Officer #of_          )
_Four_              Defendant(s).         )
_Officer matt torok_                      )
_Officer Robert Kolvig_
_Officer Brian Dallas_
_Officer Ben Coronell_

CASE NO. _1JU-05-632_CI

ORDER ON MOTION FOR _Setelment_
_on Cass · $50,000 us dollars_
_Under Civl Rule 56_
_Addm   To and Judges Rulling_
_To warrant less Entry._

It is ordered that:

☐  The motion is granted.
☐  The motion is denied.
☐  A hearing on the motion will be held at _____ Courtroom _____
                                              (Time and Date)

**Further Orders:**_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____            _____
         Date                            Judge's Signature

                                   _____
I certify that on _____         Type or Print Judge's Name
a copy of this order was mailed to (list
names):

Clerk:_____

CIV-820 (5/02) (cs)                        Civil Rules 7(b) & 77
ORDER ON MOTION

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU


JOHN H SHAKESPEARE )
Plaintiff, }
        V. )          Case No. 1 JU-05-632-CI
 City And Borough Of Juneau )
Juneau Police Department, )
& Officers # Of Four )
Officer Matt Torok )
Officer Robert Kolvig )
Officer Brian Dallas )
Officer Ben Coronell )

Defendants.

---

### Offer To Satisfy Warren less Entry In Superior Court Of Alaska

Pursuant To AS 09.30.065 and Civil Rule 68, Plaintiff offers to allow entry of Judgment

For Defendants City and Borough, Juneau Police Department, And Police Officers As

Listed As Four :Officer Matt Torok  Officer Robert Kolvig Officer Brian Dallas

Officer Ben Coronell And against All Defendants in the amount of {$35.000} US Dollars

Which amount includes all costs, interest, And any attorney fees to the date hereof.

      This is an offer of compromise only and is made for the purposes specified in

AS 09.30.065 and Civil Rule 68.It is to be construed As an admission to Warrant less

Entry.

This settlement dose not have any Thing to do with My case in The United States District

Court.  Filed Nov 29-2005      Case # J05-00 15 CV



Offer of Judgment
Shakespeare V.CBJ and Juneau Police Dept.

DATED this 20-day of December 2005.

John Shakespeare    Pro-say

6590 Glacier Hwy # 52
Juneau Alaska, 99801

## CERTIFICATE OF SERVICE

**I certify that a true and correct copy of the foregoing was mailed by first class mail,**

Postage prepaid, this 20 day of December 2005 to:

FAULKNER BANFIELD
A professional Corporation
One Sealaska Plaza, Suite 202
Juneau Alaska 99801

John Shakespeare

Dated This 20 Day Dec. 2005

niue

# In The Superior Court For The State Of Alaska
## First Judicial District At Juneau

| | |
|---|---|
| John H Shakespeare | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| V. | ) |
| City And Borough Of Juneau | ) |
| Juneau Police Department, | ) |
| & Officers # Of Four | )    Case No. 1JU-05-0632 CI |
| Officer Matt Torok | ) |
| Officer Robert Kolvig | ) |
| Officer Brian Dallas | ) |
| Officer Ben Coronell | ) |
| | ) |
| Defendants, | ) |

---

## INITIAL DISCLOSURES

Pursuant to Alaska Rule of Civil Procedure 26{a}{1}{a} Plaintiff, by Self Acting As

Attorney pro say At This Time, Provide the following initial disclosures:

A.  The factual bases for Plaintiffs defenses in this matter are set out in this case:

Alaska Rights To Privacy, Rights Guaranteed underArticle1. Sections 14 And 22 of the

ALASKAS   CONSTITUTION   RIGHTS   TO   PRIVICY. And UNITED STATES!

B.  Mr. Shakespeare told Police Officers 6 or more times to get Warrant! Excersizing

His right to privacy.

C.  In Trevor Shakespeare's Case 1JU-S03-1286 CR. On Record in this case Ruled,

By Honorable Judge Peter Froehlich that the emergency aid Did Not Apply hear they

Just wanted their man. Witch he suppressed all evidence from the time Police Officers

Kicked in Mr. Shakespeare's Door and till they left. He Ruled Illegal entry. Honorable

Judge went on Even more to elaborate that He was probably awake. Etc.

    D.  Defendants Say That this case was not filed in the Civil Rule time frame. Civil

Rule is Two years from time of incident 7-19-03 At Night, This case was filed 7-19-05

At Juneau Court House in the morning of 7-19-2005 see Exhibit_____ "B"

    E.  Defendants say they deny all alleged charges. Win infact The City Admitted to

Almost all alagashions. And I ask this court for the max amount. That may be granted in

This court and my claim is My Alaska Constitution rights To Privacy's see Attachments

Exhibit_____ "C"  Exhibit_____ "D"  Lay out of My case and Judges Order to Suppress.
                            C D. Recordings
    F.  The names of individuals likely to testify or ordered to testify

Judge Peter Froehlich

Eric Hedland

John Shakespeare

Harold Shakespeare

Trevor Shakespeare

Ben Coronell, Officer Brian Dallas. Officer Robert Kolvig, Officer Matt Torok

Margaret H. Boggs

Rick Svobodny

District Attorney Patrick Gullufsen

Dated This 16 day of December 2005

John H Shakespeare _____
6590 Glacier Hwy# 52
Juneau Alaska 99801

Dec - 20 - 2005

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

JOHN H SHAKESPEARE       )
Plaintiff,               }
            V.           )          Case No. 1 JU-05-632-CI
 City And Borough Of Juneau )
Juneau Police Department, )
& Officers # Of Four      )
Officer Matt Torok        )
Officer Robert Kolvig     )
Officer Brian Dallas      )
Officer Ben Coronell      )

Defendants.

---

## MOTION  FOR:

All Police Reports, Field Recording, And Pitchers, And hand written hand notes of the

Night Of 7-19-2003    *IN case #  1 Ju-503-1286  CR.*
*Described on  CD  1JU-803-233*


John Shakespeare *John H Shakespear*
            Date *12-20-2005*

Appointed Judge:  Larry Weeks

*Judge*
*Larry weeks*

Person Filing Proposed Order:

Name: _John H Shakespeare_    Daytime Telephone No. _1-907-209-7425_

Mailing Address: _6590 Glacier Hwy #52  Juneau Ak. 99801_

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA AT _Juneau_

_John H Shakespeare_ )
_____ Plaintiff(s), )
)
vs. )
_City and Borough oF Juneau_ )
_Police Deptment Officers oF Four_ )
_Officer Matt Tonk_ Defendant(s). )
_Officer Robert Kolwig_ )
_Officer Brian Dallas_ )
_Officer Ben Coronell_ )

CASE NO. _1JU-05-632_ CI

ORDER ON MOTION FOR _settelment_
_on case $50,000 us dollars_
_under Civl Rule 56_
_Add      To and Judges Ruleing_
_To warrant less Entry._

It is ordered that:

☐ The motion is granted.

☐ The motion is denied.

☐ A hearing on the motion will be held at _____ Courtroom _____
(Time and Date)

**Further Orders:** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____        _____
Date                                    Judge's Signature

_____
I certify that on _____        Type or Print Judge's Name
a copy of this order was mailed to (list
names):

Clerk: _____

CIV-820 (5/02) (cs)                         Civil Rules 7(b) & 77
ORDER ON MOTION

There Answer 56-57

Civil



IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

Exhibit "C"

JOHN H. SHAKESPEARE )
                           )
              Plaintiff,   )
                           )
     v.                    )
                           )
CITY AND BOROUGH OF JUNEAU )
JUNEAU POLICE DEPARTMENT,  )
& OFFICERS # OF FOUR       )
                           )
OFFICER MATT TOROK,        )
OFFICER ROBERT KOLVIG      )
OFFICER BRIAN DALLAS       )
OFFICER BEN CORONELL       )
                           )
                           )
                           )
                           )
              Defendants.  )
_____) Case No: 1JU-05-0632 CI

*City & Borough Attorney*
*City & Borough of Juneau, Alaska*
*155 South Seward Street, Juneau, Alaska 99801*
*voice: 907-586-5242 fax: 586-1147*

## ANSWER

Comes Now Defendant, the City and Borough of Juneau Police Department, a department

of the City and Borough of Juneau, Alaska, a Home Rule Municipality organized pursuant to the laws

and Constitution of the State of Alaska, ("CBJ"), and its officers Matt Torok, Robert Kolvig, Brian

Dallas, and Ben Coronell, through counsel, Deputy City and Borough Attorney Margaret H. Boggs,

and, in answer to Plaintiff's Complaint, admits, denies, and alleges as follows:

1.    Insofar as Plaintiff alleges one or more officers observed that Mr. John Shakespeare objected

      to JPD's entry, defendants admit. All other allegations are denied.

2.    Denied.

*Complaint*                    1 of 4 pages                *Shakespeare v. CBJ*
                                                          *Case No: 1JU-05-0632 CI*

City & Borough Attorney
City & Borough of Juneau, Alaska
155 South Seward Street, Juneau, Alaska 99801
voice: 907-586-5242 fax: 586-1147

3.     Insofar as Plaintiff alleges one or more officers kicked down the door to Mr. John Shakespeare's trailer and that the entry was without a warrant, Defendants admit. All other allegations are denied.

4.     Insofar as Plaintiff alleges that one or more officers handcuffed Mr. John Shakespeare, Defendants admit. All other allegations are denied.

5.     Insofar as Plaintiff alleges that one or more officers found Trevor Shakespeare in the bathroom of Mr. John Shakespeare's home with an ankle injury and that JPD took Trevor Shakespeare to Bartlett Hospital, Defendants admit. All other allegations are denied.

6.     Insofar as Plaintiff alleges that one or more officers told Plaintiff the van was totaled, and it was in fact not, defendants admit. All other allegations are denied.

7     Insofar as Plaintiff is referring to the fact that an emergency aid doctrine argument was made before Judge Froehlich at the suppression hearing held on November 17th, 2003 in the matter of State of Alaska v. Trevor Shakespeare, 1JU-S03-1286 CR, defendants admit. All other allegations are denied.

8.     Insofar as Plaintiff makes allegations concerning the content of a field recording or recordings, defendants are without sufficient information to admit or deny. All other allegations are denied.

9.     Insofar as Plaintiff alleges that Judge Froehlich ruled on November 17th, 2003 at the abovementioned suppression hearing that the entry was made without a warrant and that the emergency aid exception did not apply, defendants admit. All other allegations are denied.

10.     Insofar as Plaintiff alleges that Judge Froehlich ruled that the entry was made without a warrant and that the emergency aid exception did not apply, and as a remedy evidence was suppressed, defendants admit. All other allegations are denied.

## DEFENSES

Happened
7-19-03
Filed 7-19-05

1. Plaintiff has failed to state a cause of action upon which relief may be granted.

2. Insofar as Plaintiff alleges a state constitutional tort, he fails to state a claim upon which relief can be granted.

3. Plaintiff fails to allege damages.

4. Plaintiff's alleged damages were caused in whole or part by Plaintiff's own actions or the actions of a person, persons or governmental entity not party to this suit.

5. Plaintiff's claims are barred by the applicable statute of limitations.  — 2 year cidel

6. Defendants CBJ and defendants officers are entitled to qualified immunity, statutory immunity, and any other applicable immunity defenses.

7. Defendant reserves the right to add such additional defenses and claims as are revealed in discovery, and to join additional parties.

WHEREFORE Defendant asks the Court to:

1. Dismiss this suit with prejudice and order that Plaintiff takes nothing therefrom.

2. Award Defendants costs and reasonable attorney's fees in defending this suit.

3. Grant such additional relief as the court deems just and equitable.

DATED this 9th day of august, 2005.

CITY AND BOROUGH OF JUNEAU

By: _Margaret H. Boggs_
Margaret H. Boggs
Deputy City & Borough Attorney
Alaska Bar No. 0301005

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served via court U.S. Mail on John H. Shakespeare, at 6590 Glacier Hwy, #52 this 9th day of August, 2005. Juneau, Alaska 99801   _Lisa Carlson_

*Date* ∨ *Filled*   *Exhibit B*

JUNEAU   277977

Received From : SHAKESPEARE, JOHN
Date : 07/19/2005                    6590 GLACIER HWY #52
Orig.Court : 1JU                     JUNEAU, AK  99801
Void/Manual # :            For : SHAKESPEARE, V JPD
Case Number : 1JU-05-00632CI

| Acct | Acct Description | Amount |
|------|-----------------|--------|
| 405 | Clerk's Filing Fee | 150.00 |

...TOTAL PAID...          150.00

CA BFS 07/19/2005-1442 []  Comments: 1/10 2/20 1/100

1

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

2

3    JOHN H. SHAKESPEARE,

4                    Plaintiff,

5        v.

6    CITY & BOROUGH OF JUNEAU, JUNEAU        Case No. 1JU-05-632 CI
7    POLICE DEPARTMENT OFFICERS # OF
     FOUR
8    OFFICER MATT TOROK
9    OFFICER ROBERT KOLVIG
     OFFICER BRIAN DALLAS
10   OFFICER BEN CORONELL

11
                    Defendants.
12

13

14                    **OFFER OF JUDGMENT**

15

16        Pursuant to AS 09.30.065 and Civil Rule 68, defendants offer to allow entry of

17   judgment for plaintiff John Shakespeare and against all defendants in the amount of One

18   Hundred Dollars ($100.00), which amount includes all costs, interest, and attorney's fees

19   to the date hereof.

20        This is an offer of compromise only and is made for the purposes specified in

21

22   AS 09.30.065 and Civil Rule 68.  It is not to be construed as an admission of any type for

23   any purpose.

24

25

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ♦ Fax (907) 586-8090

DATED this 14th day of December, 2005.

**FAULKNER BANFIELD, P.C.**

Eric A. Kueffner
ABA No. 8411124
Of Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was mailed by first class mail, postage prepaid, this 14th day of December, 2005, to:

John H. Shakespeare
6590 Glacier Highway # 52
Juneau, Alaska 99801

Eric A. Kueffner

J:\22494\WP\Pleadings\Offer of Judgment.doc

Faulkner Banfield, P.C.
One Sealaska Plaza, Ste. 202, Juneau, AK 99802
Phone (907) 586-2210 ♦ Fax (907) 586-8090

Person Filing Motion:

Name: John H Shakespeare     Daytime Telephone No. 907-209-7425

Mailing Address: 6590 Glacier Hwy, #52 Juneau AK 99801

IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA AT Juneau

John H Shakespeare )
_____ )
_____ Plaintiff(s), )
vs. CBJ Juneau Police Dept )
Officer of Four )
Officer matt Tarok )
Officer Robert Kollibg )
Officer Brian Dallas    Defendant(s). )
Officer Ben Connell )

CASE NO. 1JU-05-632 CI

MOTION FOR Settlement in case

I, John H Shakespeare , request that: This Court Award said amount of $50,000 dollars in this case on the evedaniec of ther Addmission and Judge Froehlich ruled This was a warrant less Intry into mr. Shakespear Home

This request should be granted because (*Include any statutes, court rules, court decisions and any facts that support granting the request*): The CBJ Addmitted To and Judge Ruled warrant less intry

They Striped me Of my Constitution Rights Given to me. By Alaska Constitution Right Guaranteed under Article I Section 14 and 22 Of the Alaska Constitution Rights to Privicy and United States
[*Attach extra pages if necessary.*]

I certify that all statements in this motion and any attachments are true to the best of my knowledge and belief.

12-20-05                        John H Shakespeare
_____                 _____
Date                           Signature

**Notice to Opposing Parties**: You have the right to file a response to this motion. Forms and instructions (CIV-808 Packet) are available at courts and at www.state.ak.us/courts/forms.htm. File your response at (court address): Court House Juneau Abska 99801     463-4700 You must also mail a copy to the person who filed the motion. Civil Rules 77(c)(2) and 6 set the deadline within which you must respond. For most motions, you must respond within 10 days if the motion was personally served on you or within 13 days (from the date of mailing) if the motion was mailed to you.

Case Number _1JU-05-632 CI_

### CERTIFICATE OF SERVICE

*[If the opposing party is represented by an attorney, you must serve the motion on the attorney rather than on the opposing party.]*

I certify that I mailed (by first class mail) or hand-delivered a copy of this motion to:

Name of Other Party or Attorney: _Faulkner BanField_
Address: _A Professional Corporation One Seaskia Plaza, Sutie 202 Juneau AK 99801_
Date: _12-23-05_          ☒ mailed  ☐ hand-delivered

Name of Other Party or Attorney: _Court House Judge Larry Weeks_
Address: _Juneau Court House 463-4700_
Date: _12-23-05_          ☐ mailed  ☒ hand-delivered

Name of Other Party or Attorney: _____
Address: _6590 Glaicer Hwy #52  Juneau AK  99801_
Date: _12-23-05_          ☐ mailed  ☒ hand-delivered

_____
Signature of Person Filing Motion

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU


JOHN H SHAKESPEARE        )
Plaintiff,                )
              V.          )          Case No. 1 JU-05-632-CI
  City And Borough Of Juneau )
Juneau Police Department,  )
& Officers # Of Four       )
Officer Matt Torok         )
Officer Robert Kolvig      )
Officer Brian Dallas       )
Officer Ben Coronell       )
              Defendants.  )

---

**THIS CASE IS ON John Shakespeare's CONSTITUTIONAL RIGHTS TO**

**PRIVICY GUARANTEED UNDER ARTICLE 1. SECTIONS 14 AND 22**

**OF THE ALASKA CONSTITUTION RIGHTS TO PRIVICY.**

It seems that the attorney for the City and Borough {Faulkner Banfield} is relying

On the defendants acted to provide emergency aid to an individual located in

John Shakespeare's house. Judge Peter Froehlich ruled in Trevor Shakespeare's

Case 1JU-SO3-1286 that the emergency aid Did Not Apply Hear. The police were

Motivated hear to Get there man{ Trevor Shakespeare.}  And suppressed all

Evidence gathered after the illegal, Kicking down Mr. Shakespeare door. Warrant

less entry of John Shakespeare's home. And stated so in a little reprimand to the

State, DA and Police Officers for these kinds of Action, Etc. Lessen to CD"s

Numbering in _____ **I CD** _____ Under Civil Rule 56  I request this Court to award

Mr. Shakespeare $~~~~~~.000 dollars to settle this case and Defendants take nothing. In
     ($50.000)

1JU-05-632-CI Case closed, IN THE SUPERIOR COURT OF ALASKA {JUNEAU}

John H Shakespeare

*John H. Shakespeare*

*12-20-05*

**Rule 56. Summary Judgment.**

    **(a) For Claimant. A party seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move for a summary judgment in the party's favor upon all or any part thereof.**

(c) **Motion and Proceedings Thereon.** The motion shall be made pursuant to Rule 77, and may be supported by affidavits setting forth concise statements of material facts made upon personal knowledge. There must also be served and filed with each motion a memorandum showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The adverse party in accordance with Rule 77 may serve opposing affidavits, a concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and any other memorandum in opposition to the motion. Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. Summary judgment, when appropriate, may be rendered against the moving party. A decision granting a motion for summary judgment is not a final judgment under Civil Rule 58. When the decision adjudicates all unresolved claims as to all parties, the judge shall direct the appropriate party to file a proposed final judgment. The proposed judgment must be filed within 20 days of service of the decision, on a separate document distinct from any opinion, memorandum or order that the court may issue.

(d) **Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

(e) **Form of Affidavits - Further Testimony - Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials

of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(f) **When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(g) **Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

(Adopted by SCO 5 October 9, 1959; amended by SCO 258 effective November 15, 1976; by SCO 1153 effective July 15, 1994; and by SCO 1430 effective April 15, 2002)


**See affidavits Marked exhibit    { A  } There Offer to settle with John Shakespeare**

**$100.00 dollars to settle, This is made in Bad faith, This Would not pay for hinges.**

**NO Less!    Door knob, door, doorframe, Window, Wall, Sheetrock, and Labor**

**Etc.**

**Is This A Joke... And Taking his Constitution Rights away from him.**

John H Shakespeare

Dated: 12-20-05

IN THE DISTRICT COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT

State of Alaska,                    )
                                    )        Filed in the Trial Courts
                 Plaintiff,         )     STATE OF ALASKA, FIRST DISTRICT
                                    )            AT JUNEAU
vs.                                 )
                                    )        1.20.04
Trevor Shakespeare,                 )        8:00 a.m.
                                    )
                 Defendant.    -    )     By _____ Deputy
                                    )
_____

Case No. 1JU-S03-1286 CR

## DEFENSE MOTION FOR PROTECTIVE ORDERS

VRA CERTIFICATION

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

Defendant Trevor Shakespeare, through counsel, moves this

Court for orders prohibiting the State from introducing

evidence that (A) the Shakespeares refused police entry; (B) a

statement police attribute to Trevor Shakespeare ("Trevor

whispered, 'dad, don't open the door'); (C) evidence of where

and how Trevor Shakespeare was positioned in the trailer as

police tried to gain entry (through John Shakespeare's consent)

for the reasons below.

CERTIFICATION
The undersigned certifies that on the
20th day of January 2004 a
true and correct copy of this document
was served on:
Juneau DAO in open court

Public Defender Agency Juneau By:
G. Hedland  APD

Alaska Public Defender Agency
P.O. Box CD
Juneau, Alaska 99811
Phone: (907) 465-4911

1

## ARGUMENT

THE EVIDENCE THAT THE STATE MAY SEEK TO INTRODUCE IS WITHIN THE SCOPE OF THE EVIDENCE THIS COURT EXCLUDED AND, INDEPENDENTLY, IT GOES TO THE SHAKESPEARES' LAWFUL REFUSAL OF ENTRY.

A. <u>The Shakespeares' Refusal of Entry</u>.

The Court should not permit the State to introduce evidence that the Shakespeares refused police entry.  This Court ruled that the entry was illegal under the fourth amendment and our privacy clause.  The denial of entry is within the scope of that ruling.  Additionally, inclusion of evidence that entry was refused, if not with evidence already excluded, would be akin to allowing officers to comment on a defendant's right to remain silent.  That is, it would be comment tacitly asking the jury to make an inference based on a person's exercise of a constitutional right.  Finally, in the same vein, in the context of the Court's ruling on the evidentiary matters, inclusion of testimony that entry was refused would be prejudicial.  It would invite the jury to speculate, not unlike informing the jury that evidence was in fact suppressed, which is, of course, improper.

B. <u>Officer Torok's (or another officer's) testimony that Trevor Shakespeare whispered to his father John, "dad, don't open the door."</u>

Defense opposes introduction of this statement for several reasons.  First, for the reasons above, it is an exercise of his constitutional right, and, again within the context of this Court's prior ruling, it falls within the scope of excluded

Alaska Public Defender Agency
P.O. Box CD
Juneau, Alaska 99811
Phone: (907) 465-4911

2

evidence.  Second, admitting the statement would be prejudicial

for the reasons above.

Moreover, the statement cannot be heard on the tape provided.
The State provided counsel with an audio tape that covers the
period from the police's initial contact at the Shakespeares'
door until John Shakespeare unequivocally denies entry (it then
cuts out until the police are about to break in).  On the tape,
the conversation between Officer Torok and John Shakespeare is
very clear and easy to hear. What cannot be heard is any
statement by Trevor Shakespeare as alleged by the police.  Thus,
the evidence is unreliable.

Finally, assuming for the sake of argument that Trevor
Shakespeare did make the statement, "dad, don't open the door",
that again is a clear exercise of a constitutional right
refusing entry.  At that point, the police's presence became
illegal.  Thus, the analysis in light of this Court's prior
ruling again points to the conclusion that the statement falls
within the scope of the Court's prior ruling.  Admission of the
statement would again invite speculation on the part of the jury
and cast light on the Court's evidentiary ruling.

C. Evidence of Where, How, and in What State Trevor Shakespeare
Sat in the Trailer.

The police testified at the evidentiary hearing that Trevor
Shakespeare first sat beneath the entryway door.  This is when

Alaska Public Defender Agency
P.O. Box CD
Juneau, Alaska 99811
Phone: (907) 465-4911

3

the police say Trevor said, "Dad, don't open the door."  If true, Trevor exercised his right to refuse warrantless entry and at that point police presence became illegal, and any evidence after that point must be suppressed.

It is well established that homeowners give the police – and other potential visitors – implied consent to enter onto their front walks, porches, and property lines.  But nowhere is it said that this implied consent is <u>irrevocable</u> consent.  *See State v. Christensen*, 953 P.2d 583, 587 (Idaho 1998) ("Although we agree that there is an implied invitation for the public to use normal access routes to a house, this implied invitation is not irrevocable.").  And if <u>consent</u> to enter (the property--not the residence) may be implied from the surrounding facts and circumstances, it is clear that it may be revoked.

John Shakespeare clearly and repeatedly told the officers that they could not come into the trailer.  The State has alleged that Trevor Shakespeare <u>earier</u> effectively communicated the same.  Any suggestion that police were then free to remain indefinitely on the front porch, peering in the windows with flashlights, pounding on windows, and listening and pounding at the door, is preposterous.  Their implied permission to enter was revoked at the point they were denied entry.

This is not like the situation in *Michel v. State*, 961 P.2d 436, 438 (Alaska App. 1998).  *Michel* involved officers who walked

Alaska Public Defender Agency
P.O. Box CD
Juneau, Alaska 99811
Phone: (907) 465-4911

4

up a driveway, knocked at the door, and immediately smelled the unmistakable odor of growing marijuana.  The only question was whether the "No Trespassing" signs they walked past revoked the implied permission that was given to the general public to enter. There was no specific communication directed at the officers that was alleged to have revoked their permission to enter.

Here there were a number of specific communications directed at these particular officers.  The question is not, therefore, whether the general public was prohibited from surrounding the Shakespeares' residence.  Rather, the question is whether these particular officers were asked to leave.

In *State v. Dykstra*, 926 P.2d 929 (Wash. App. 1996), the homeowner refused the officers entry but they "…just hung around … they wouldn't leave".  Unlike here, in that case eventually the homeowner agreed to let the officers come in the house. Nonetheless, the court found the search illegal, reasoning that the homeowner could--and did--revoke the implied permission to come on the property.  926 P.2d at 933.

In deciding the scope of this implied permission, courts have applied the standard of the "reasonably respectful person".  That is, the police are entitled to move around within the property only to the amount of intrusion and the level of observation that one would expect from a "reasonably respectful citizen".  *See, e.g., State v. Seagull*, 632 P.2d 44, 47 (Wash. 1981); *State v.*

Alaska Public Defender Agency
P.O. Box CD
Juneau, Alaska 99811
Phone: (907) 465-4911

5

*Clark*, 859 P.2d 344, 349 (Idaho App. 1993).  Whether officers

1  exceeded this level of intrusion must be judged on the facts of

2  each case.  For example, in a case in which officers went up a

3  driveway at 12:10 a.m. to check for the smell of marijuana, the

4  entry was found to be unlawful because no reasonably respectful

5  citizen would consider himself or herself welcome at that hour.

6

7  *State v. Ross*, 4 P.3d 130, 136 (Wash. 2000). This is approximately

8  the same time as the police's presence in our case.

9      In this case, officers were told repeatedly that they could

10  not come in the house.  Nevertheless, they stayed on the property

11  and continued to eavesdrop, pound on and peek through windows, and

12  periodically pound on the door.  No reasonably respectful citizen

13  would persist in such actions after being repeatedly refused

14  entry.

15

16                          **CONCLUSION**

17      Evidence that Trevor Shakespeare refused entry, and evidence

18  gathered as a result of the police's illegally lingering on the

19  property should be excluded either as within the scope of the

20  initial order or independently for the reasons above.

21  Respectfully submitted this 20th day of January, 2004.

22

23

24  _____

25  Eric Hedland
    Assistant Public Defender

26

Alaska Public Defender Agency
P.O. Box CD
Juneau, Alaska 99811
Phone: (907) 465-4911

IN THE DISTRICT COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT

State of Alaska,                    )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )
                                    )
Trevor Shakespeare,                 )
                                    )
            Defendant.              )
_____)

Case No.   1JU-S03-1286 CR

**REPLY TO STATE'S OPPOSTITION TO MOTION TO SUPPRESS AND REQUEST FOR EVIDENTIARY HEARING**

VRA CERTIFICATION
I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

Defendant Trevor Shakespeare, through counsel, renews his request for an evidentiary hearing and replies to the State's opposition as follows.

The State relied in its opposition on Harrison v. State, 860 P.2d 1280 (Alaska App. 1993)--referenced at some length in Defense's original motion--as justification for this entry because "[those] facts are quite similar to the facts in this case." *State Opposition*, p. 2, lines 25-26. But the State does not analyze the asserted similarities. Nor does the State discuss the legal standard for the application of the emergency aid doctrine. The case law is unequivocal: A condition

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

precedent of a valid entry is that it not be primarily motivated by a desire to investigate crime. <u>Gallmeyer v. State</u>, 640 P.2d 847 (Alaska App. 1982) []. It is uncontroverted that police primarily desired to investigate Trevor Shakespeare for DUI.

Additionally, the State fails to address the reasons a neutral judicial officer must issue a warrant (i.e. grant "permission" for entry). Defense suspected, but could not confirm because the audio field tape unfortunately cuts out, that police made some efforts to contact a judicial officer. Apparently, they did not. This bolsters Mr. Shakespeare's argument that the entry was without justification.

Also, the State asserts that Trevor Shakespeare "<u>was</u> hurt" (<i>State Opposition</i>, p. 2, line 17), and that circumstance is evidence of the legitimacy of the entry after the fact. But the test is what the officers knew before entry, not what was discovered upon entry. <u>Michigan v. Tyler</u>, 436 U.S. 439 (1978) (exigency determined by what officers knew at time of entry). Additionally, that assertion raises two ironies. The first is that the police's interaction with Trevor Shakespeare may have been the proximate cause of any injury. The second is that, on the tape that has been disclosed, police repeatedly accuse Trevor Shakespeare of malingering--evidence that police did not think he was injured. Again, this supports a finding that the

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

2

entry was motivated by a desire to get Trevor Shakespeare, not tend to his hypothetical medical needs.

Finally, the entry is not justified by hot pursuit. The State has made no reasoned showing that the exception applies.

In sum, the State is attempting to shroud an illegal entry under the guise of the asserted good Samaritan intentions of the police. But the fourth amendment has not been eviscerated to the point where a search is justified because a District Attorney says it is. The entry here was illegal, and the evidence gathered as a result of that illegal entry should be SUPPRESSED.

DATED this 14th day of October, 2003 by:

Eric Hedland
ABA No. 0105027
Assistant Public Defender

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

CERTIFICATION
The undersigned certifies that on the
14th day of Oct 2003 a
true and correct copy of this document
was served on:
Dist DA
(T box
Public Defender Agency Juneau By:

3

IN THE DISTRICT COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

State of Alaska, )
      Plaintiff, )
    vs. )
Trevor Shakespeare, )
      Defendant. )

Filed in the Trial Courts
STATE OF ALASKA, FIRST DISTRICT
AT JUNEAU

10·14·03

By ____ Deputy

Case No.: 1JU-S03-1286 CR

## NOTICE OF UNOPPOSED MOTION

On September 29, 2003, Eric Hedland, counsel for defendant, filed a Defense Motion to Suppress Evidence Obtained Through an Illegal Entry and Request for Evidentiary Hearing with certification of service on the District Attorney's Office. No response has been filed by the State, despite the requirement of Criminal Rule 42 (c)(1) that, even if a party is not opposed to a motion, it must file a written statement to that effect within 10 days after service. See, Willie v. State, 829 P.2d 310, 312-3 (Ak.App. 1992).

Therefore, the District Attorney's Office is hereby notified that unless an opposition to the above motion is filed by Monday, October 20, 2003, the court will assume that the State does not oppose or disagree with it.

DATED this 13 of October, 2003.

PETER B. FROEHLICH
District Court Judge

I certify that a copy of the foregoing document was placed in the Court box of District Attorney and Public Defender on the 14th day of October, 2003.

Nancy Phillips

Alaska Court System

- 1 -

IN THE DISTRICT COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT

State of Alaska,      )
                      )
            Plaintiff, )
                      )
vs.                   )
                      )
Trevor Shakespeare,   )
                      )
            Defendant. )
                      )
_____)

Case No.  1JU-S03-1286 CR

## DEFENSE MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH AN ILLEGAL ENTRY AND REQUEST FOR EVIDENTIARY HEARING

> **VRA CERTIFICATION**
> I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

Defendant, Trevor Shakespeare, by counsel, moves this Honorable Court for an order to SUPPRESS any and all statements and physical evidence gathered after the warrantless entry by police into his home on July 19, 2003.

DATED at Juneau, Alaska, this 25th day of September, 2003.

PUBLIC DEFENDER AGENCY

_Eric Hedland_

Eric Hedland
AK Bar No. 0105027
Assistant Public Defender

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

> **CERTIFICATE OF SERVICE**
> The undersigned hereby certifies that on the _14th_ day of September-2003, a true and correct copy of the aforementioned Motion, Affidavit, Memorandum & Order(s) was faxed/mailed/hand delivered to the following: DAO By: _(14)_

1

## FACTUAL BACKGROUND

Based on police reports written by Juneau police, Officer Matt Torok responded to the scene of an auto accident shortly before midnight on July 19, 2003.  As he passed by the van believed to be involved in the accident, two people, Timothy Carle and Sean Cropley flagged him down.  Apparently, each told Officer Torok that a shirtless white male had driven the van, left on foot, and went into Switzer trailer #52.

Soon after, a cadre of police officers (Officer Torok, Officer Kolvig, Officer Brian Dallas, Srg. Ben Coronell) converged outside of Switzer #52.  Officer Torok, through windows, could see both Trevor Shakespeare and his father, John Shakespeare in the trailer.  He could also hear the two talking.  At some point, Trevor Shakespeare, according to Officer Torok, moved to the kitchen, and was positioned so that Officer Torok, when peeking through the window, could only see his legs.  John Shakespeare in no uncertain terms told the police that they could not enter.

Officer Kolvig continued to discuss entry with John Shakespeare.  John Shakespeare, according to Officer Kolvig, stated: "Get the f--- off my property!  Do you have a warrant?  Then get the f--- off my property."  Officer Kolvig, according to his report, told John Shakespeare, "Trevor[has] apparently wrecked a van and I [Officer Kolvig] need[] to contact him…If

2

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

Trevor [is] intoxicated, then he [is] in trouble and could be arrested." Ten minutes later, Officer Torok, also refused entry by John Shakespeare, phoned District Attorney Richard Svobodny. The District Attorney, according to Officer Torok, told police to enter "to make sure that J. Shakespeare was not injured [sic]." According to Officer Kolvig, his understanding was that Mr. Svobodny gave "permission" to enter.1 Thus, according to his police report, Officer Kolvig "kicked" the front door.

Officers found an agitated John Shakespeare on the couch. Trevor Shakespeare had moved to the rear bathroom. Both were handcuffed, and police arrested Trevor for DUI and Driving Suspended. He was transported to Bartlett hospital. Blood was drawn. Later, police obtained a search warrant, 1JU-S03-151 SW, and seized the blood sample. It apparently yielded a result of 199mg/dl.

Trevor Shakespeare was arraigned on charges of DUI and DWLS on August 14, 2003. This motion follows.

## SUMMARY OF ARGUMENT

Juneau police violated Trevor Shakespeare's constitutionally guaranteed rights when they kicked down the door and rampaged through his home. Warrantless seizures by

---

1 Only one audio tape of the field contact apparently exists, though many police officers were on scene. Disturbingly, the tape breaks at the point John Shakespeare tells the police to get a warrant, and resumes as police kick down the door. Approximately 10 minutes passed, according to Officer Torok's report.

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

the government are per se unreasonable. <u>Alaska Constitution, Article I, Section 14.</u> Forced entries of homes at night are of the most intrusive police conduct. <u>Alaska Constitution, Article I, Section 22.</u> Absent a warrant, police must have an independent justification for the warrantlesss entry. Here, rather than obtain a warrant issued by a neutral judicial officer, police called Juneau's senior Distict Attorney. He advised police to enter and perform a "welfare check". This is improper when the true reason for the entry—according to the officers' own words—was to investigate a crime. Since the forced police entry violated Trevor Shakespeare's constitutional rights, the results of that entry must be SUPPRESSED.

### ARGUMENT

JUNEAU POLICE OFFICERS' WARRANTLESS ENTRY INTO TREVOR SHAKESPEARE'S HOME VIOLATED HIS RIGHTS GUARANTEED UNDER <u>ARITICLE I, SECTIONS 14</u> AND <u>22</u> OF THE <u>ALASKA CONSTITUTION</u>, EVIDENCE GATHERED AS A RESULT MUST BE SUPPRESSED.

In order for a warrantless entry by the State to be justified, the State must rely upon an exception to the warrant requirement. Here, the only plausible argument available to the State to carry its burden to demonstrate the legality of the entry is the "exigent circumstances" exception. The State will likely argue that the situation required immediate entry as a matter of practical necessity.

4

I.  WARRANT  REQUIREMENT  AND  PURPOSE  IS  UNDERMINED  WHEN  A
DISTRICT ATTORNEY GRANTS "PERMISSION" FOR A FORCED ENTRY.

The core purpose of the warrant requirement is to prevent police from doing what it did here.  When police feel compelled to invade a person's home, the constitutional rule is that police may not enter a home without a warrant.  Alaska Constitution, Art. I, Sections 1, 14, and 22.  The Constitution also requires that a neutral magistrate issue the warrant.  Coolidge v. New Hampshire, 403 U.S. 443, 449 (1971). This is to assure that an inference of probable cause is drawn by a person who is not in "a position to be influenced by personal or professional motives."  Keller v. State, 543 P.2d 1211, 1225 (Alaska 1975).

Here, rather than consult a detached judicial officer, police consulted a District Attorney.  As our Supreme Court stated in Keller:

> The purpose of the warrant requirement is to prevent the police from hasty, ill-advised or unreasonable actions in "the often competitive enterprise of ferreting out crime."  The law allows the police to infringe upon a person's fundamental right to be free from search a seizure only when such infringement is reasonable. *The conclusion that the imposition is reasonable should not be drawn by the very persons who are the agency for the depravation of rights.*

Keller, 543 P.2d at 1219 [emphasis added, citation omitted].

Police interpreted the District Attorney's endorsement to kick down the door the Shakespeare's home as permission to

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

enter.    That interpretation was incorrect. However, the fact that police called the District Attorney is evidence that the police, who had secured a perimeter around the home, believed that they needed a warrant to enter.  The police circumvented the law's requirement that a neutral person--not an interested party--decide whether they had a right to kick in the door. In effect, police did exactly what the law is designed to prevent: They exercised unfettered, unchecked discretion to reach a self-serving conclusion that a legal basis existed to barge into a citizen's home.

## II.  NO EXCEPTION TO WARRANT REQUIREMENT JUSTIFIED POLICE FORCED ENTRY INTO TREVOR SHAKESPEARE'S HOME.

Police forced entry on the Shakespeare's home without a warrant.  Article I, Section 14 of our Constitution states:

> The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated.  Nor warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Courts interpret the constitutional warrant requirement as meaning a warrantless entry is *per se* unreasonable unless it falls within one of the limited exceptions to the warrant requirement.  Payton v. New York, 445 U.S. 573 (1980).  Here, police did not obtain a warrant.  Therefore, the State bears

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

the burden of justifying the intrusion.  <u>Bell v. State</u>, 519 P.2d 804, 806 (Alaska 1974).

The State will likely argue that exigent circumstances negated the warrant requirement.  Moreover, the call to the District Attorney is evidence of the police's abundance of caution.  When the District Attorney informed the police that, in fact, they did not need a warrant because they could kick down the door under the guise of a "welfare check", that simply confirmed what police suspected: No warrant was needed.  This self-serving avoidance of the warrant requirement, however, should be scrutinized not abstractly but under the totality of facts in a given situation.

When the government asserts a warrantless seizure or entry is justified by exigency, fact finder must determine whether the government had "probable cause, coupled with a 'compelling need for official action and no time to secure a warrant'".  <u>Ingram v. State</u>, 703 P.2d 415, 422 (Alaska App. 1985)(quoting <u>Michigan v. Tyler</u>, 436 U.S. 499, 509 (1978)).  In <u>Johnson v. State</u>, 622 P.2d 981, 985-6 (Alaska App. 1983), the Court laid out factors to be considered in determining whether exigent circumstances exist:

> (1) information that a crime has been committed and the seriousness of the crime;
> (2) information that a suspect or evidence of the crime is in the property to be searched;

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

7

(3) the extent that the search will intrude on privacy rights2;

(4) the amount of urgency involved, *i.e.*, could the police have frozen the situation preventing foreseeable injury to persons and property while a warrant was obtained;

(5) the time necessary to obtain a warrant;

(6) the foreseeable risk to the police guarding the site while a warrant was obtained;

(7) information indicating that the concealed suspects or possessors of the evidence in question are aware the police are on their trail;

(8) the extent to which the evidence sought is susceptible to ready destruction3;

(9) the extent of the risk that the suspect will escape and in fleeing harm others, *i.e.*, information that the suspect is armed or has a history of violence;

(10) the extent to which the entry may be made peaceably; and finally,

(11) the extent to which the entry is motivated primarily by a desire to arrest a suspect or seize evidence *i.e.* the possibility that the emergency is a subterfuge to gain entry to search for evidence.

In this case:

(1) Police wanted to search for evidence in support of their suspicion that Trevor Shakespeare had been DUI;

(2) The police entered Trevor Shakespeare's home;

(3) Police gained entry by kicking down the door;

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

---

2 "In Alaska we have also recognized the distinctive nature of the home as a place where the individual's privacy receives special protection. This court has consistently recognized that the home is constitutionally protected from unreasonable searches and seizures, reasoning that the home itself retains a protected status under the Fourth Amendment and Alaska's constitution distinct from that of the occupant's person. The privacy amendment to the Alaska Constitution was intended to give recognition and protection to the home. ... Our territory and now state has traditionally been the home of people who prize their individuality and who have chosen to settle or to continue living here in order to achieve a measure of control over their own lifestyles which is now virtually unattainable in many of our sister states." Ravin v. State, 537 P.2d 494, 503 (Alaska 1975).

3 "A mere showing of ready destructibility will not suffice; there must be good reason to believe that destruction of evidence is imminent." Finch v. State, 592 P.2d 1196, 1198 (Alaska 1979).

(4) Police had pepper spray in hand when they broke in;

(5) Police had the home surrounded;

(6) A judicial officer was on call;

(7) Police had several hours to obtain evidence to support a conviction under AS 28.35.030(a)(2) (4-hour window);

(8) Police spend little, if any, time attempting to obtain a warrant;[4]

(9) The District Attorney, who purportedly authorized the search is not a neutral judicial officer;

(10) The entry was motivated by a desire to gather evidence of a crime.

Thus, this Court must determine "whether a sufficient showing of compelling need has been made, [looking] to the totality of the circumstances of the case, balancing the nature of the exigency against the degree of intrusiveness of the warrantless search or seizure. Ingram, 703 P.2d at 422.

A. Nature of Exigency.

In answering the question of the nature of the exigency, Defense asserts that none existed. According to police's own reports, at least four officers were present around the trailer. The suspect was apparently lying down or asleep.

---

4 Police reports are silent as to whether officers attempted to obtain a warrant or contact a judge.

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

There was no danger that the suspect (asleep on the floor) might flee.5 Nor was there any real danger of destruction of evidence because the crime suspected—DUI—is physiologically impossible to immediately dispose of.

B. *Emergency Aid Doctrine, Which Requires that the State Prove Three Elements Existed, Does Not Apply.*

The State may raise the argument that police entered to check on Trevor Shakespeare's welfare. One subset of exigent circumstances is the "Emergency Aid" doctrine. For the doctrine to apply, three *conditions* must be present. Our Courts have defined the elements, all of which need be present, for its application:

A concise summary of the elements necessary to justify a warrantless entry under the emergency aid doctrine was recently set forth in People v. Mitchell, 39 N.Y.2d 173 (N.Y. 1976), cert. Denied 426 U.S. 953 (1976) [citations edited]; there, the New York Court of Appeals identified three separate requirements:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
(2) The search must not be primarily motivated by intent to arrest and seize evidence.
(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

Gallmeyer v. State, 640 P.2d 837, 842 (Alaska App. 1982).

_____

5 Upon forced entry, police found Trevor Shakespeare not asleep on the floor, but rather awake in the rear bathroom.

10

The State's argument that the search here is justified under the "emergency aid" doctrine is seriously undermined by John Shakespeare's presence. His father could aid if a health emergency arose. Moreover, police were motivated solely, not just primarily, by a desire to arrest and search Trevor Shakespeare. On this point, the Court in <u>Gallmeyer</u> stated,

> [T]he emergency aid doctrine must not be permitted to act as a subterfuge, allowing officers to search for evidence of crime in areas to which they would otherwise have no access in the absence of a warrant. Accordingly, a high level of judicial scrutiny is focused on the actual intent of officers invoking the exception, and the exception has been held not to apply where an officer was motivated by a desire to search for evidence of criminal misconduct, rather than by a genuine intent to render assistance.

<u>Gallmeyer</u>, 640 P.2d at 842.

Under these facts, the doctrine does not justify the intrusion.

It is true that a "welfare check" warrantless entry has been upheld. In <u>Harrison v. State</u>, 860 P.2d 1280 (Alaska App. 1993) the Court upheld a warrantless police entry based on the "emergency aid" doctrine. In that case, a police officer, attempting to serve a misdemeanor arrest warrant, saw the defendant passed out at the kitchen table. The defendant did not respond to the officer's banging on the window or the door. The officer then opened the cabin's door (apparently unlocked), yelled, and yet got no response. The Court cited

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

the conditions laid out in <u>Gallmeyer</u> and upheld the entry as lawful, stating, "we are convinced that the [trial court] could properly find that [the officer's] entry of the cabin was not pretextual and was based on probable cause." <u>Harrison</u>, 860 P.2d at 1283.

That case is factually distinguishable for several reasons. First, the defendant there was alone, unresponsive, and asleep at a table. The officer was then likely the only person who, if needed, could render aid. Secondly, the entry was not motivated by a desire, as opposed to here, to arrest and search. Additionally, entry was gained peaceably.

In this case, Officer Kolvig stated to John Shakespeare, "Trevor apparently wrecked [your] van. If he is intoxicated, he is in trouble and could be arrested." *Kolvig's Police Report* (07/21/03). Moreover, Trevor was awake. The label "welfare check" was in reality a pretext to justify an unlawful entry. Thus, the entry was illegal.

*C. The Nature of the Intrusion Here is Extraordinary.*

One's home is a particularly private place that Alaska is willing to recognize. "If there is any area of human activity to which a right to privacy pertains more than any other, it is the home." <u>Ravin</u>, 537 P.2d at 503. Here, police kicked in the Shakespeare's home's door, at night, and rampaged through the trailer. As cited above, the test for determining the

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

12

legality of a warrantless entry requires, in addition to exigency, that the purported exigency be balanced against the degree of intrusion. Here, the intrusion was of the most severe possible. The propriety of the police's actions should be judged in light of that intrusion. Rather than inconvenience themselves and obtain a warrant, they chose to disregard the encumbrances placed on them by the Constitution. In doing so, they broke the law. Therefore, any evidence gathered as a result must be SUPPRESSED.

### CONCLUSION

For all the reasons above, Trevor Shakespeare's motion to suppress should be GRANTED.

Alaska Public Defender Agency
P.O. Box 110216
Juneau, Alaska 99811
Phone: (907) 465-4911

13

In the District Court for the State of Alaska at Juneau

| | | | |
|---|---|---|---|
| **Media No.:** | 1JUB03-233 | **Judge:** | PBF |
| **Date:** | Monday, November 17, 2003 | **Clerk:** | Cab |
| **Plaintiff:** | State        vs. | | |

| **Defendant's Name:** | **Case No:** | **DOB:** | **Address:** |
|---|---|---|---|
| Trevor Shakespeare | 1JU-03-1286 CR | **DisplayText canr** | [Enter Defendant's Address] |

**Type of Proceedings:**   Evidentiary Hearing

**Counsel Present:**    Plaintiff:   District Attorney-Gullufsen
                      Defendant:   Public Defender-Hedland

**Defendant:**    Present

| | |
|---|---|
| **Bail Set/Continues:**    [Enter Text] | |
| **Transport Order:**    [Enter Text] | |
| **Other Court Orders:**    [Enter Text] | |
| **Next Court Date(s) and Time(s):** [Enter Date] | **Type of Hearing(s):** [Enter Hearing Type]     **Location:** [Enter Location] |

**Summary of Proceedings:  Grant Motion To Suppress/ Pre-Trial Hearing on 1-12-04 @ 3:00 pm & Jury Trial on 1-20-04 @ 8:15 am**

| | |
|---|---|
| 9:36:48 AM | Case Called |
| 9:39:34 AM | **Oath – Robert Kolvig** |
| 9:40:50 AM | **District Attorney- direct exams Robert Kolvig**<br>I work for JPD officer for over 17 ½ years. On 1-19-03, I responded to a report of an accident. Got information a person ran from a van running through Switzer trailer court. Witnesses said he was injured. I proceeded to trailer #52. Office Torok was at the scene.  John Shakespeare lived at trailer #52. Officer Dallas and Sergeant Coronell arrived.  I was the officer at the front door, entry to the trailer.  The interior of trailer was dark.  I shined my  flashlight in a window.  I saw a person on the floor.  I knocked on door but I couldn't get that person to wake up.  I knew the person as Trevor Shakespeare.  I noticed John Shakespeare stood up in the house. I got his attention to open the door.  He said he wasn't going to open the fucking door. I continued to ask him to open the door.  I said someone got into his trailer and the person my be injured.  I told him this several times.  I told him Trevor may be injured.  John was also yelling at Officer Torok.  John came over to the door.  I could hear him whisper to Trevor.  I told John Trevor had wreck his van.  I said the van could be possibly totaled. John said his van was  in the driveway and Trevor didn't drive his van.  I believed at that point Trevor was injured.  I couldn't get a response from Trevor while he was leaning on the doorway.  We got information from Officer Torok and Sergeant Coronell that the District Attorney said we could brake open the door.  I kicked open the door. |
| 9:50:15 AM | Myself and Sergeant Coronell entered the residence. John was very irritated. and yelling at us. I put John in handcuffs for my protection and his. Trevor got up and ran down the hallway. Trevor was saying something about his leg being broke. I believe an ambulance was called.  I did take the handcuffs off John. I never arrested John. |
| 9:53:02 AM | Officer Kolvig draws diagram of Trailer #52 |

### Public Defender-cross exams Robert Kolvig

There were Officers on the outside. I don't know where they all were. Before I got to Switzer #52 I had talked to dispatch. When we arrived at the scene we got information the person who drove the van limped off the trailer #52. I believe Officer Torok spoke to the witnesses. I don't believe I took pictures of the van. At the time I didn't no the van was wrecked. I was wearing a tape recorder at the event. I did not record it. There were 4 officers at the scene. Dispatch said person leaving the scene may have been injured. I left the station knowing that someone was running from this wreck van and the person could possibly be injured. I have my own personnel cell phone. I use it while I'm at work. When I got to the front door I spoke to Officer Torok. I shined my flashlight through the window. I know Trevor from criminal contact and also John Shakespeare. I attempted to get the person leaning against the door to open the door. John told me I couldn't come in. I believe he told me to get a warrant. I told him at one point that the van was totaled. I lied to him to open the door knowing how much he cared for his vehicles.

**10:08:34 AM** | There were times I was talking to John and so was Officer Torok. I told John we think Trevor is hurt. Ten to 15 minutes passed before I kicked in the door. I did not call a judicial officer or the District Attorney that night. I did not have pepper spray in my hand. The first thing I saw was John Shakespeare screaming. I didn't see Trevor crawl into the kitchen. I did not tackle John. I did handcuff him. I did not have contact with Trevor. I was at the police station writing reports that night.

**10:15:16 AM** | **COURT:**   - What he was doing before the call isn't relevant. – objection is sustained

**10:15:47 AM** | I didn't do any follow up on this case. Sergeant Coronell assisted me with John Shakespeare.

**10:17:04 AM** | ### District Attorney- redirects Robert Kolvig
I was told the driver of the van could be injured. A person was leaning against the door.

**10:18:42 AM** | ### Oath – Matthew Torok

**10:19:07 AM** | District Attorney- directs exam Matthew Torok
JPD officer for over 3 years. I was dispatched to a vehicle accident. I was at the station when I was dispatched to the accident. There was about 100 feet of skid marks. Two juveniles at the scene said the driver left the scene and was limping to #52 trailer at Switzer. I asked them to go with me and show me where the driver went. Officer Kolvig and I approached the trailer where John Shakespeare lived. Noticed through the window Trevor was talking to John. John was yelling. Officer Kolvig was by the front door and I was by the windows. I was looking into a different window then Officer Kolvig. I was trying to talk to John. John was saying fuck off. At some point Trevor and John went to the kitchen. I could see Trevor's legs. He wasn't moving for about 10 minutes. Numerous times I said we need to check on Trevor. Told John to check on *Trevor*. He said no I am going to bed and he laid down on the couch and closed his eyes. I then called District Attorney officer to let him know about the situation. I Waives attorney told we could go in because of medical conditions. Sergeant Coronell told John he has 3 seconds to open the door or we would kick it in. He counted to 3 and we went into the door. Trevor went into the bathroom. He was yelling his ankle was broken, don't touch me. We put Trevor into handcuffs and had an ambulance come and take Trevor to hospital. The 2 witnesses looked at Trevor's face and identified him as the drive of the van. There was alcohol in the van. I received a search warrant for Trevor's medical records at BMH. I believe Officer Vinson got the search warrant.

**10:29:49 AM** | ### Public Defender- cross exams Matthew Torok
Officer Vinson would of got the search warrant at my request. I got the search warrant on 7-28-03. Someone called dispatch about a vehicle accident. This was on Renninger Drive. The witnesses didn't say the person looked injured. I didn't know he was injured. The kids came up

to me right away. I believe they said they saw the driver of the van and there was an accident and they knew where he went. I believe Officer Dallas took pictures of the van. I believe I took pictures of alcohol. Officer Kolvig and I went to the front door. Was reported they saw driver running and staggering away. Officer Dallas and Sergeant Coronell arrived. I used a tape recorder that night.

10:40:37 AM | Public Defender- plays Officer Torok's tape of that night

10:41:58 AM | John said several times you can't come in. I might of turned the tape recorder off when I called Mr. Svobodny. I was shining my flashlight into the window and John was getting irritated because I was doing that. We didn't have any information about Trevor having a hurt ankle before we went in. Sergeant Coronell suggested I call the District Attorney. I told him who it was possibly an injured person and we wanted to go in. I told him who it was. I believe Officer Kolvig kicked down the door and was the first one into the residence. Trevor was moving quickly to the bathroom. Trevor started yelling and screaming that his ankle was broke. We put him into handcuffs and called for the ambulance. I believe I told him I didn't believe his ankle was broken. The issue about his broken ankle didn't come up until after we broke into the trailer.

10:52:48 AM | **District Attorney – re directs Matthew Torok**
In my report the juveniles didn't indicate he was running. It takes a period of time to get a search warrant from a judge. I told Mr. Svobodny that Trevor Shakespeare wasn't moving for about 10 minutes. Call the District Attorney under unusual circumstances.

10:56:02 AM | **Off/on record**

11:02:46 AM | **Oath – Brian Dallas**

11:03:11 AM | **Public Defender- direct exams Brian Dallas**
I am a JPD officer for over 4 years. On 7-19-03 there was a vehicle accident where the driver fled into Switzer trailer park. I was in the Lemon Creek area when I responded to the call. There was description given over the radio of the driver by Officer Torok. I drive by the van on my way to the trailer park. The juveniles knew the trailer not the number. I didn't see any significant damage to the van when I drove by. I believe Officer Torok was the first officer to arrive then me and Officer Kolvig arrived 2 minutes later. I heard the juveniles said the driver had an orange shirt on but took it off. I knew the driver fled the scene of an accident. I located the driver's t-shirt. I believe Officer Coronell took photographs of the van. The van was close to the telephone pole. It didn't look like there was impact. I didn't look at the wind shield. I heard John Shakespeare conversing. He leaned up against the window and said what are you guys doing here, get out of here. I didn't go into any of the bedrooms. I went into the bathroom. I believe there was a back door.
11:14:46 AM | Remember saying the van came back registered as John. He said his van was in the driver way. We said no its not there. Told him to come and look but he didn't. I had been at John Shakespeare's trailer before, probably 3 to 6 times. I believe I had the pepper spray my hand when we entered the trailer. Officer Torok asked John to check on Trevor. I definitely heard John. I saw Trevor slumped into the kitchen. I didn't write a police report. I wasn't a primary officer. I was there regarding someone fleeing from an accident. I didn't search the house. I didn't tape record when I was there.

11:22:26 AM | **Oath – Benjamin Coronell**

11:22:57 AM | **Public Defender- direct exams Benjamin Coronell**
I am a Sergeant with JPD. I arrived to Switzer #52 regarding an accident on 7-19-03. I took one quick look at the van before I drove up to #52. I knew it was John Shakespeare's van. There was

2 patrol cars prior to my arrival. I think Officer Kolvig was the last one there. I asked Officer Torok what happened. We watched through the bay window. The officer's said they didn't see Trevor move when they were there. We were trying to get entry into the trailer. I had a conversation with Officer Torok about him calling Rick Svobodny. The concern was to see if Trevor was hurt. At the time I looked at the van it looked like it struck the light pole. I did not hear the conversation Officer Torok had with Rick Svobodny. I was talking to John Shakespeare. John had a tape recorder. John was complaining when being handcuffed. I told him to calm down and I would have the cuffs removed. I walked back into the trailer to assess the situation with Trevor. I heard Trevor screaming about his ankle. I believe he was handcuffed. I believe a took pictures of the van. The outside of the van didn't appear to be damaged. I believe the window was cracked. I didn't find any keys. John Shakespeare requested we look for keys. John requested we get his father there. John told us to get a search warrant to go into his place.

| | |
|---|---|
| 11:35:16 AM | **District Attorney- cross exams Benjamin Coronell**<br>There seemed to be some sort of crack in the wind shield |
| 11:36:05 AM | **Oath – Richard Svobodny** |
| 11:36:38 AM | **Public Defender- direct exams Richard Svobodny**<br>I recall getting a call from Officer Torok about a motor vehicle accident in July. They are encouraged to call to see if they need a warrant. Most often do we have probable cause. It depends upon the facts to the advise I give them. I am aware of many different cases about emergency aid doctrine. |
| 11:40:46 AM | **District Attorney- object to this line of questioning** |
| 11:41:26 AM | Public Defender- responds |
| 11:41:55 AM | <u>COURT</u>:   - sustain objection |
| 11:42:56 AM | I told Officer Torok under the circumstances described emergency aid doctrine applied. |
| 11:44:40 AM | **Public Defender- Closing argument** |
| 11:51:36 AM | District Attorney- Closing argument |
| 11:56:24 AM | Public Defender- Rebuttal |
| 11:59:36 AM<br>12:02:25 PM | <u>COURT</u>:   -<br>**Goes over decision on record -  Grant motion by Public Defender / State's case fails on 2nd prong / Officers were primary motivated to investigate a DUI.  Grant motion to suppress evidence as to gaining entry and to the blood test.  This doesn't included evidence of the vehicle.  Believe the officers were acting in good faith.** |
| 12:11:19 PM | District Attorney-  We will be relaying on observations prior to entry.  We are ready to go to trial. |
| 12:12:33 PM | Public Defender-  We would rather have the trial in January. We will waive Rule 45. |
| 12:12:53 PM | District Attorney - Object to January |
| 12:13:09 PM | Defendant – I agree to waive my speedy trail rights. |

| 12:14:53 PM | COURT:    - Jury Trial on 1-20-04 @ 8:15 am & Pre-Trial Hearing on 1-12-04 @ 3:00 pm Signature bond and release conditions are continued. |
| 12:15:47 PM | Recessed |